IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100538-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 23, 2012) |
| Dustin Lynn Bird, | ) | |
| | ) | 2012 UT App 239 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 091908403
The Honorable William W. Barrett

Attorneys:     Linda M. Jones, Christopher L. Stout, and Charity Shreve, Salt Lake
               City, for Appellant
               Mark L. Shurtleff and Karen A. Klucznik, Salt Lake City, for Appellee

-----

Before Judges Orme, Thorne, and Christiansen.

THORNE, Judge:

¶1     Dustin Lynn Bird appeals his conviction on one count of failure to respond to an officer's signal to stop, a third degree felony. *See generally* Utah Code Ann. § 41-6a-210(1)(b) (2010). Bird argues that the district court failed to adequately instruct the jury on the elements of that offense.

BACKGROUND

¶2     On October 12, 2009, Salt Lake City police officer Alma Todd Sweeney was traveling eastbound on 700 South in Salt Lake City when he observed a blue Ford

Mustang approaching him in the oncoming lane. As the two vehicles passed each other, the Mustang's driver and passenger looked at Sweeney and reacted with what he interpreted as nervousness. Suspicious, Sweeney turned around and began following the Mustang. A license plate check by Sweeney revealed "an ongoing investigation," and he observed the Mustang's occupants bending down as if they were attempting to hide or retrieve something underneath the seats. After observing the Mustang fail to stop at a stop sign, Sweeney activated his lights to initiate a traffic stop as the two vehicles proceeded south on Navajo Street.

¶3 The Mustang's driver, Bird, slowed but did not stop. Instead, Bird continued southward, drifting in his lane and almost colliding with cars parked along the street. Bird passed several spots where it would have been safe to pull over and turned west on American Avenue. Bird then slowed and turned toward the curb as though coming to a stop but then pulled back out and accelerated back up to twenty or twenty-five miles per hour. Bird finally stopped the Mustang at 1400 West.

¶4 As Bird was coming to a stop, his passenger got out and started jogging away while "shifting stuff in his clothing." Sweeney, who had left his vehicle to approach the Mustang, got back in his vehicle and began pursuing the passenger. After a short pursuit, Sweeney apprehended the passenger. In the process of apprehending the passenger, Sweeney observed Bird drive away rapidly in the Mustang. Sweeney radioed a description of Bird and the Mustang to dispatch, and another officer stopped Bird without incident several minutes later. Bird initially denied knowing his passenger but ultimately admitted to police that the passenger was a friend of his and that "he was pulled over by the police, and then the police chased his friend."

¶5 Bird was charged with one count of failure to respond to an officer's signal to stop, a third degree felony.[1] Prior to closing arguments at Bird's jury trial, the district court discussed the jury instructions with counsel for Bird and the State.[2] The proposed elements instruction stated,

---

1. Bird was also charged with and convicted of failure to stop at a stop sign, but that conviction is not at issue in this appeal, and we treat this matter as if it arose solely from Bird's failure to respond conviction.

2. Both Bird and the State appeared before the district court through counsel, and the colloquies cited in this opinion took place between the district court and respective counsel. However, for simplicity, we attribute respective counsel's statements to Bird and the State throughout this opinion.

The defendant, Dustin Lynn Bird[,] is charged with Failure to Respond to Officer's Signal to Stop. You cannot convict him of this offense unless you find beyond a reasonable doubt, based on the evidence, each of the following elements:

1. That on or about October 12th, 2009;
2. the defendant, Dustin Lynn Bird;
3. did operate a motor vehicle, and;
4. having received a visible or audible signal from a peace officer to bring the vehicle to a stop;
5. did attempt to flee or elude a peace officer by vehicle or other means.

. . . .

This instruction generally tracked the statutory language of Utah Code section 41-6a-210(1)(a)(ii), under which Bird was charged. *See generally* Utah Code Ann. § 41-6a-210(1)(a)(ii) ("An operator who receives a visual or audible signal from a peace officer to bring the vehicle to a stop may not . . . attempt to flee or elude a peace officer by vehicle or other means.").[3]

¶6 After reviewing this instruction, Bird objected, "I don't see anything outlining the mental state or reckless as the lower standard, I think it should be defined to the jury." The district court inquired, "On what?" Bird continued, "On the element of—when we're going through the elements that on or about October 12th, Dustin Bird did operate a motor vehicle. I think there needs to be explanation that he needs to do that recklessly or willfully." The State and the district court disagreed with Bird's assertion, and the discussion turned to the two different ways in which a person can violate Utah Code section 41-6a-210(1)(a):

[The State]: Under—there are two theories of this charge. One is that he evaded the public willfully—

---

3. Utah Code section 41-6a-210(1)(a)(i) provides an alternative charging theory, prohibiting the operation of a vehicle "in willful or wanton disregard of [a signal to stop] so as to interfere with or endanger the operation of any vehicle or person." *See* Utah Code Ann. § 41-6a-210(1)(a)(i) (2010). Bird was not charged under this alternate theory of criminal liability.

[The district court]:  That'd be different.

[Bird]:  Yeah.

[The State]:  That's not what we have here.

[Bird]:  That's correct, but then the other one, it's not mentioned in the statute, and the standard is reckless?

[The district court]:  No, it's—no, no, no, no, no, no, no, no.

The district court then stated, apparently in reference to the proposed elements instruction, "I think it's got the elements here."  After a further short discussion, Bird again stated, "I think it needs to be defined for the jury," to which the district court responded, "I don't think so.  There's no word in there that goes [to] reckless or knowing or anything else—."  The district court concluded the discussion by stating, "[Y]ou've made your record, I've denied it.  You ready to go?"  Bird responded, "Yes."

¶7     The matter proceeded to the jury with the proposed elements instruction, and no other instruction addressed the mental state issue.  Bird was convicted, and he now appeals.

ISSUE AND STANDARD OF REVIEW

¶8     Bird argues that the district court committed reversible error when it failed to instruct the jury on the mental state required for conviction of failure to respond to an officer's signal to stop.  "The standard of review for jury instructions to which counsel has objected is correctness."  *State v. Cooper*, 2011 UT App 234, ¶ 5, 261 P.3d 653 (internal quotation marks omitted).

ANALYSIS

¶9     Bird requested a jury instruction defining the applicable mental state that the State was required to prove to support the charge of failure to respond to an officer's signal to stop.  The district court denied Bird's request, and the jury convicted Bird without any instruction addressing the mental state or mens rea that was required for

the crime charged. We determine that the district court should have instructed the jury on this issue, and we reverse Bird's conviction.

¶10 As an initial matter, the State argues that Bird failed to preserve this issue for appeal. To this end, the State asserts that "[Bird's] only challenge to the [elements] instruction was that it failed to attach a mental state of 'recklessly or willfully' to the 'did operate a motor vehicle' element of the crime." We disagree with the State's characterization of Bird's objection.

¶11 Bird's original objection to the lack of instruction on mental state was not limited to the "did operate a motor vehicle" element, but instead generally requested that the elements instruction define the required mental state for the failure to respond charge. When the district court asked for clarification, Bird began "going through the elements," the first of which was "that on or about October 12th, Dustin Bird did operate a motor vehicle." However, Bird also specifically addressed the mental state required for criminal liability under "the other one," referring to the second theory of liability enunciated in the failure to respond statute, under which he was charged. *See generally* Utah Code Ann. § 41-6a-210(1)(a)(ii) (2010) ("An operator who receives a visual or audible signal from a peace officer to bring the vehicle to a stop may not . . . attempt to flee or elude a peace officer by vehicle or other means."). Bird indicated to the district court that the theory under which he was charged did not expressly provide for a mental state and suggested that the appropriate mental state might be recklessness; the district court responded, "No, it's—no, no, no, no, no, no, no, no." As Bird continued to request a mental state instruction, the district court explained that "I think [the proposed instruction has] got the elements here" and "[t]here's no word in there that goes [to] reckless or knowing or anything else" before expressly denying Bird's request.

¶12 Taken as a whole, Bird's objection clearly alerted the district court that he was requesting a mental state instruction on each of the elements of the failure to respond charge. This is sufficient for preservation of that issue for appeal. *See State v. Bujan*, 2006 UT App 322, ¶ 23, 142 P.3d 581 (finding adequate preservation where the defendant's objection was "sufficiently precise to alert the trial court" of the alleged error and gave the court "an opportunity to make any corrections deemed necessary" (internal quotation marks omitted)). Further, to the extent that Bird's objection to a lack of mental state instruction on all of the elements could have been clearer, we note that the district court emphatically disagreed with Bird's position throughout the preservation colloquy before expressly denying Bird's request with the comment that "you've made your record." Under these circumstances, further pursuit of a mental

state instruction would clearly have been futile, and futile objections are not required to preserve issues for appeal. *See generally State v. Rothlisberger*, 2004 UT App 226, ¶ 29, 95 P.3d 1193 ("In essence, the trial court's ruling that the testimony was lay witness testimony rendered any objection that was predicated on expert-testimony rules futile. Under our law, parties are not required to make futile objections in order to preserve a future claim.").

¶13    Having determined that Bird preserved the lack of a mental state instruction as an issue for appeal, we turn to the question of whether the district court erred when it failed to give such an instruction. "[T]he general rule is that an accurate instruction upon the basic elements of an offense is essential, [and] failure to provide such an instruction is reversible error that can never be considered harmless." *State v. Stringham*, 957 P.2d 602, 608 (Utah Ct. App. 1998) (internal quotation marks omitted). Thus, if the failure to respond charge against Bird has a requisite mental state, then the district court's failure to give a mental state instruction was reversible error.

¶14    The State argues that there was no required mental state for any element of Bird's failure to respond charge because the crime of failure to respond to an officer's signal to stop is found in Utah's Traffic Code rather than its Criminal Code. The State relies on Utah Code section 76-2-101:

> (1)(a)  A person is not guilty of an offense unless the person's conduct is prohibited by law; and
>
> (b)(i) the person acts intentionally, knowingly, recklessly, with criminal negligence, or with a mental state otherwise specified in the statute defining the offense, as the definition of the offense requires; or
>
> (ii) the person's acts constitute an offense involving strict liability.
>
> (2) These standards of criminal responsibility *do not apply* to the violations set forth in Title 41, Chapter 6a, Traffic Code, unless specifically provided by law.

Utah Code Ann. § 76-2-101 (2008) (emphasis added). The crime of failure to respond is located within Title 41, Chapter 6a, Traffic Code, *see id.* § 41-6a-210, and accordingly the

State argues that the mental state requirements enunciated in section 76-2-101(1)(b) do not apply to that crime.

¶15    Whether or not the State is correct about the interplay between Utah Code sections 76-2-101 and 41-6a-210,[4] we determine that the plain language of section 41-6a-210 incorporates its own set of mental state requirements on which Bird was entitled to a jury instruction.  Under either theory of liability enumerated in section 41-6a-210(1)(a), an operator commits no crime unless he first "receives" a signal to stop. *See id.* § 41-6a-210(1)(a).  Further, the particular charge against Bird required that he "attempt" to flee or elude an officer after receiving the signal to stop.  *See id.* § 41-6a-210(1)(a)(ii).

¶16    Both of these elements implicate particular mental states that Bird was required to have in order to be convicted of the charged crime.  The requirement that Bird "receive" a signal to stop implies that he needed some level of mental appreciation that he was being hailed to a stop by a peace officer.  Similarly, in order for the jury to determine that Bird "attempt[ed]" to flee or elude police after receiving the signal to stop, it would necessarily have to find that the purpose of Bird's actions was to flee or elude the police.  Bird requested a jury instruction defining these required mental states to the jury, and he was entitled to receive it.[5] *See generally Stringham*, 957 P.2d at 608. The district court's failure to grant Bird's request constitutes reversible error, *see id.*, and accordingly we reverse Bird's conviction.

---

4. Despite the plain language of section 76-2-101, we do not necessarily agree with the State that section 76-2-101(2) automatically removes the concept of mens rea from the entire Utah Traffic Code.  We note that Utah Code section 76-2-102 contains the seemingly contradictory language, "Every offense not involving strict liability shall require a culpable mental state," Utah Code Ann. § 76-2-102 (2008), with no exception for offenses found in the Traffic Code.

5. We recognize that "[i]t is normally unnecessary and undesirable for a trial judge to volunteer definitions of terms of common usage for the jury." *State v. Couch*, 635 P.2d 89, 94 (Utah 1981).  However, while the terms "receive" and "attempt" are terms of common usage, we do not believe that the criminal law mens rea implications of those terms would necessarily be obvious to a jury.  *Cf. State v. Stringham*, 957 P.2d 602, 609 (Utah Ct. App. 1998) ("It is too long a reach to suggest the jury divined that defendant had to act intentionally because such a level of volition is inherent in the concept of 'devis[ing] a scheme.'" (alteration in original)).

CONCLUSION

¶17    Outside of the strict liability context, a defendant who requests a jury instruction on the mental state or states required for conviction is entitled to such an instruction, and the failure to give that instruction constitutes reversible error. Here, Bird requested and was entitled to a jury instruction that defined the required mental state for each element of the charged crime of failing to respond to an officer's signal to stop, an offense that by its own terms is not a strict liability crime. Because Bird was denied such an instruction, we reverse his conviction on that charge.[6]

_____

William A. Thorne Jr., Judge

-----

¶18    I CONCUR:

_____

Michele M. Christiansen, Judge

-----

¶19    I DISSENT:

_____

Gregory K. Orme, Judge

_____

6. Our failure to enunciate the exact mental state requirement as to each element of a failure to respond charge under Utah Code section 41-6a-210(1)(a)(ii) is intentional. Should the State opt to retry Bird on this charge, we leave it to the district court to determine in the first instance what the contents of any requested mental state instruction should be. We will review the adequacy of that instruction if and when the question comes before us.