*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2015 UT 7**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

DUSTIN LYNN BIRD,
*Respondent.*

No. 20120906
Filed January 23, 2015

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable William W. Barrett
No. 091908403

Attorneys:

Sean D. Reyes, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen.,
Salt Lake City, for petitioner

Linda M. Jones, Noella A. Sudbury, Salt Lake City, for respondent

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and
JUDGE ELIZABETH HRUBY-MILLS joined.

JUSTICE LEE authored a dissenting opinion.

Having recused himself, ASSOCIATE CHIEF JUSTICE NEHRING does
not participate herein; JUDGE ELIZABETH HRUBY-MILLS sat.

JUSTICE PARRISH, opinion of the Court:

### INTRODUCTION

¶1 On certiorari, we are asked to review the court of appeals' ruling that the trial court erred by not providing a mens rea jury instruction for the charge of failure to respond to an officer's signal to stop under Utah Code section 41-6a-210. We are also asked to determine whether the court of appeals erred by failing to provide guidance on remand regarding a correct jury instruction. We affirm the court of appeals, but exercise our discretion to provide such guidance.

## BACKGROUND

¶2   On the evening of October 12, 2009, Salt Lake City police officer Alma Sweeny was patrolling the Glendale area in an unmarked police vehicle.  Officer Sweeny drove past a blue Ford Mustang and observed that the driver, Dustin Lynn Bird, and the passenger looked "nervous" and appeared to be "ducking down in the vehicle."  Officer Sweeny decided to follow the Mustang and observed the driver and the passenger leaning over, causing the vehicle to swerve.  The Mustang approached a stop sign and slowly rolled through it without coming to a complete stop.  Officer Sweeny thereafter activated the lights in his police vehicle.  The Mustang immediately slowed in speed but did not pull over.  Officer Sweeny testified that "[t]here were several safe places" to pull over, but the Mustang continued driving and turned onto a different street.  After making the turn, the Mustang slowed down and pulled to the curb as though it were going to stop, but then quickly pulled away and continued driving for approximately half a block before stopping.  While the Mustang was still rolling to a stop, the passenger exited the vehicle and began running.  Officer Sweeny stopped his vehicle behind the Mustang, stepped out, and walked toward the Mustang.  After seeing the passenger flee, he returned to his vehicle without saying anything to Mr. Bird. He then drove past the Mustang and around the corner, where he parked the police vehicle and pursued the passenger on foot.

¶3   After apprehending the passenger, Officer Sweeny observed the Mustang pull quickly away from the curb and drive off.  Officer Sweeny called for backup. Shortly thereafter, another officer located the Mustang and activated his lights.  The second officer testified that Mr. Bird stopped "immediately."  Mr. Bird was then taken into custody and later charged with failure to respond to an officer's signal to stop (failure to respond), a third degree felony under section 41-6a-210 of the Utah Code.  That statute provides that "[a]n operator who receives a visual or audible signal from a peace officer to bring the vehicle to a stop may not: . . . attempt to flee or elude a peace officer by vehicle or other means."  UTAH CODE § 41-6a-210(1)(a).

¶4   Mr. Bird's case was tried to a jury.  At the close of evidence, the trial court presented the proposed jury instructions to the parties. After reviewing the instructions, defense counsel objected to the elements instruction for the failure-to-respond charge on the grounds that it did not "outlin[e] the mental state" required for the offense and that the requisite mental state "need[ed] to be defined

for the jury." The trial court disagreed, asserting, "I think it's got the elements here." Defense counsel continued to press for an instruction that included a mental state of either willfully or recklessly. Although the State conceded to a "low knowingly" mental state, the court disagreed, ending the colloquy by stating to defense counsel, "You've made your record, I've denied it." The court thereafter adopted the following instruction, which tracked the statutory language:

> The defendant, Dustin Lynn Bird is charged with Failure to Respond to Officer's Signal to Stop. You cannot convict him of this offense unless you find beyond a reasonable doubt, based on the evidence, each of the following elements:
>
>   1. That on or about October 12th, 2009;
>   2. the defendant, Dustin Lynn Bird;
>   3. did operate a motor vehicle, and;
>   4. having received a visible or audible signal from a peace officer to bring the vehicle to a stop;
>   5. did attempt to flee or elude a peace officer by vehicle or other means.

In its closing, the prosecution argued that the jury "[did] not have to look in to the defendant's mind" to determine his culpability. The jury returned a guilty verdict.

¶5 Mr. Bird timely appealed his conviction to the court of appeals where he argued that the trial court erred "when it failed to instruct the jury on the mental state required for conviction of failure to respond to an officer's signal to stop." *State v. Bird*, 2012 UT App 239, ¶ 8, 286 P.3d 11, *cert. granted*, 298 P.3d 69 (Utah 2013). The court of appeals agreed with Mr. Bird, reversing the trial court. *Id.* ¶ 17. Although the court of appeals remanded Mr. Bird's case to the trial court for a new trial, it did not provide guidance for the trial court on remand. It asked the trial court "to determine in the first instance what the contents of any requested mental state instruction should be." *Id.* ¶ 17 n.6.

¶6 We granted the State's petition for certiorari. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶7 "On certiorari, we review the decision of the court of appeals for correctness" and may affirm its decision "on any ground

supported in the record." *Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶ 11, 52 P.3d 1267 (internal quotation marks omitted).

## ANALYSIS

### I. MR. BIRD PRESERVED HIS OBJECTION TO THE JURY INSTRUCTION

¶8 The State first argues that the court of appeals erred in finding that Mr. Bird preserved his objection. It contends that Mr. Bird did not preserve his mens rea argument because his only request to the trial court was "that the mental states [intentionally, knowingly, or recklessly] be added to the elements instruction," whereas on appeal, Mr. Bird argues that the trial court should have defined the terms "receive" and "attempt."  In response, Mr. Bird asserts that his argument on appeal is not that the trial court should have defined "receive" and "attempt," but rather that it should have identified the requisite mental state for the jury because the mens rea implications of the terms "receive" and "attempt" are unclear.  Mr. Bird also argues that continuing to pursue his objection in the trial court would have been futile in light of the court's comment to Mr. Bird that "[he had] made [his] record." We agree with the court of appeals and hold that Mr. Bird sufficiently preserved his jury instruction objection.

¶9   First, the State misconstrues Mr. Bird's argument on appeal. Although his brief includes a discussion of the terms "receive" and "attempt," the essence of his argument on appeal is that these terms incorporate a mens rea element into the failure-to-respond offense. Mr. Bird has not argued that "receive" and "attempt" should have been defined to the jury, but instead that the jury should have been instructed on the mental states embodied by these terms. In short, Mr. Bird's argument on appeal is the same argument he made to the trial court.

¶10 Second, Mr. Bird presented his argument to the trial court in a clear manner. To preserve an issue, counsel must raise the issue in the trial court "in such a way that the trial court has an opportunity to rule on that issue." *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366. We look to three factors to determine whether the trial court had such an opportunity:  (1) whether the issue was raised in a timely fashion, (2) whether it was raised specifically, (3) and whether the party "introduce[d] supporting evidence or relevant legal authority." *Id.*

¶11 In this case, Mr. Bird's objection was timely. Defense counsel raised the objection at her first opportunity to object to the proposed jury instructions. The objection was also specific. The State attempts to characterize Mr. Bird's objection as overly narrow. But counsel objected on the grounds that she did not "see anything outlining the mental state," and argued that "there needs to be [an] explanation that [Mr. Bird acted] . . . recklessly or willfully." In short, Mr. Bird specifically objected to the lack of a mens rea instruction for the failure-to-respond offense as a whole. Finally, although defense counsel did not introduce relevant legal authority, counsel was given only a brief moment to review the statute-based language in the jury instructions and make her objection. Where there was not an opportunity to gather relevant legal authority, it is sufficient—for preservation purposes—that counsel relied on the statutory language in making her objection.

¶12 In sum, we conclude the issue was preserved for appeal because Mr. Bird presented his argument to the trial court in a way that gave the court an opportunity to rule on the issue. Thus, we turn to the merits.

## II. THE TRIAL COURT SHOULD HAVE INSTRUCTED THE JURY ON THE REQUIRED MENS REA

¶13 The court of appeals held that the trial court erred by not defining the required mental state for each element of the failure to respond charge under Utah Code section 41-6a-210(1)(a). The failure-to-respond statute provides, "An operator who *receives* a visual or audible signal from a peace officer to bring the vehicle to a stop may not: . . . *attempt* to flee or elude a peace officer by vehicle or other means." UTAH CODE § 41-6a-210(1)(a) (emphasis added). The court of appeals explained that the terms "receive" and "attempt" indicate that the offense "incorporates its own set of mental state requirements on which [Mr.] Bird was entitled to a jury instruction." *State v. Bird*, 2012 UT App 239, ¶ 15, 286 P.3d 11. It acknowledged that these are common terms, but reasoned that "the criminal law mens rea implications of those terms would [not] necessarily be obvious to a jury." *Id.* ¶ 16 n.5. We agree with the court of appeals and hold that the trial court erred in not instructing the jury on the mens rea requirement for the failure-to-respond charge.

### A. Mens Rea Is a Basic Element of an Offense and Requires an Instruction

¶14 The general rule for jury instructions is that "an accurate instruction upon the basic elements of an offense is essential. Failure

to so instruct constitutes reversible error." *State v. Bluff*, 2002 UT 66, ¶ 26, 52 P.3d 1210 (internal quotation marks omitted). A mens rea element is an "essential element of [an] offense." *State v. Cobo*, 60 P.2d 952, 959 (Utah 1936). Thus, failure to instruct the jury as to the required mens rea, when it is an element of the crime, is reversible error.

¶15 A trial court should provide the jury with a mens rea instruction when a criminal statute includes terms that have mens rea implications. In *State v. Stringham*, 957 P.2d 602, 609 (Utah Ct. App. 1998), for example, the defendant was convicted of communications fraud, but the court of appeals reversed and remanded for a new trial because the trial court failed to instruct the jury on the mens rea element. *Id.* It explained, "It is too long a reach to suggest the jury divined that defendant had to act intentionally because such a level of volition is inherent in the concept of 'devis[ing] a scheme.'" *Id.* (alteration in original).

¶16 Of particular concern is an instruction that leaves the erroneous impression that a crime is one of strict liability, when it in fact contains a mens rea element. In *State v. Pearson*, the defendant had been convicted of failure to disclose a transaction to a government employer. 1999 UT App 220, ¶ 1, 985 P.2d 919. The court of appeals reversed the conviction, reasoning that "[b]y selectively applying the mens rea to some, but not all, of the elements of the offense, the jury could easily have believed defendant was strictly liable for [the remaining element]." *Id.* ¶ 12.

¶17 An appropriate jury instruction must also distinguish between the general and specific intent requirements of an offense. *State v. Potter*, 627 P.2d 75, 78 (Utah 1981). In *Potter*, we remanded for a new trial "[b]ecause the instructions given . . . failed to explain adequately the distinction between the general and specific intent requirements." *Id.* Thus, a trial court must instruct the jury on the proper mens rea for the offense charged. And the instruction must identify the mens rea implicated by the statutory language, must include a mens rea for all elements, and must distinguish between general and specific intent.

*B. The Required Mens Rea for Failure to Respond*

¶18 In this case, both parties agree that the failure-to-respond offense includes a mens rea element. Violations of the Utah Traffic Code, such as this, are strict liability offenses "unless specifically provided by law." UTAH CODE § 76-2-101(2). In this case, however, the terms "receive" and "attempt," which are contained in the

statutory language, indicate that this crime includes some level of mental appreciation. What the parties dispute is whether a jury instruction that simply lists the statutory elements of the offense is sufficient to alert the jury to the mens rea element.

¶19 The State argues that because the terms "receive" and "attempt" are terms of common usage, it was unnecessary to instruct the jury as to the meaning of these terms. We agree that the jury would have understood the plain meaning of the terms "receive" and "attempt." But we cannot assume that the jury understood the mens rea implications of these terms. Indeed, mens rea is a "legal term of art" that ought to be explicitly explained to a jury. *See State v. Jeffs*, 2010 UT 49, ¶ 43, 243 P.3d 1250.

¶20 We can expect a lay juror to understand that the term "receive" contemplates a level of knowledge. *See* Webster's New College Dictionary 1195 (2007) (including among the definitions of "receive," "to apprehend mentally; get knowledge of or information about"). Therefore, a juror would likely have perceived that the "receives a visual or audible signal from a peace officer" element of the offense requires knowledge of the peace officer's signal. But we cannot assume that a juror would recognize the significance of this knowledge requirement as an essential mens rea element. Thus, it was error for the trial court not to instruct the jury that the charge included a knowingly mens rea element and define what would satisfy that element.

¶21 The trial court's error in not including a mens rea instruction is even more apparent in the context of the "attempt to flee or elude a police officer" element. The term "attempt" carries a distinct meaning in criminal law that we cannot expect a lay juror to understand without instruction. The common dictionary definition of attempt is "to try, solicit," or "to make an effort to do, get, have, etc." *Id.* at 91. In contrast, the statutory definition of attempt means something more than to try or make an effort. As explained in Utah Code section 76-4-101(1), attempt means to "engage[] in conduct constituting a substantial step toward commission of the crime" and to "intend[] to commit the crime." Thus, the statutory meaning of attempt connotes a conscious decision with more specific action than does the common dictionary definition of the term.

¶22 Although the term "attempt" implicates a mental state requirement, it does not necessarily indicate the applicable level of mens rea. For example, the crime of assault, like failure to respond, includes attempt as one of its elements. Utah Code § 76-5-102(1)

("Assault is . . . an attempt, with unlawful force or violence, to do bodily injury to another . . . ."). But we have explained that the assault statute itself does not prescribe the requisite mental state. *State v. Hutchings*, 2012 UT 50, ¶ 12, 285 P.3d 1183. In other words, the requisite mens rea is not apparent from the statute's use of the term "attempt." Utah Code section 76-2-102 explains that "intent, knowledge, or recklessness shall suffice to establish criminal responsibility" "when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability." Thus, intent, knowledge, or recklessness must "be found to establish criminal responsibility" in the context of assault. *Id.* ¶ 12.

¶23 In the context of the failure-to-respond offense, the "attempt to flee or elude" element implicates an intentional mens rea. To flee or elude means something more than to merely leave or depart; the terms indicate action with a specific purpose. *See* WEBSTER'S NEW COLLEGE DICTIONARY 540 (2007) (defining "flee" as "to run away or escape"); *Id.* at 463 (defining "elude" as "to avoid or escape from by quickness, cunning, etc."). Because the act of fleeing or eluding requires a conscious decision to escape or avoid, one could not recklessly flee from a peace officer. Although a person might act recklessly by *departing* from a police stop without the police officer's permission, the person would not be *fleeing* unless it were his intention to escape or avoid the police officer. To attempt to flee or elude, therefore, requires that the actor leave in an effort to escape or avoid a peace officer. Thus, the trial court should have instructed the jury that an "attempt to flee or elude" requires an intentional mental state.

¶24 In sum, the court of appeals correctly held that the trial court erred in denying Mr. Bird a mens rea jury instruction because the instruction given to the jury did not specify the essential mens rea elements of the failure-to-respond charge.

### III. GUIDANCE FOR REMAND

¶25 The State also argues that the court of appeals erred by not providing guidance on remand. We disagree. Although appellate courts have the discretion to provide guidance on remand, they are not required to do so. *Compare State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867 (exercising our discretion to provide guidance), *with State v. Verde*, 2012 UT 60, ¶ 62, 296 P.3d 673 (deferring to the trial court's "superior position" in matters of evidence and withholding guidance). Thus, it was not error for the court of appeals to ask the

trial court to determine, in the first instance, the proper mens rea instruction.

¶26 We, however, choose to provide such guidance. If the State recharges Mr. Bird, we direct the trial court to instruct the jury that Mr. Bird must have knowingly "received a visual or audible signal from a police officer" and must have intended "to flee or elude a peace officer." And the trial court should also include an instruction defining the knowing and intentional mental states.

## CONCLUSION

¶27 We affirm the court of appeals' reversal of Mr. Bird's conviction because the trial court erred in failing to instruct the jury on the mens rea requirements of section 41-6a-210 of the Utah Code. On remand, the trial court should instruct the jury as to the mens rea required for each of the elements of the failure-to-respond charge.

––––––––––

JUSTICE LEE, dissenting:

¶28 I respectfully dissent from the majority's determination of reversible error in the district court's failure to give an instruction clarifying the *mens rea* implications of the elements of the offense set forth in Utah Code section 41-6a-210(1)(a). Perhaps such an instruction would have aided the jury somewhat, by clarifying the import of the elements of (a) "receiv[ing] a visual or audible signal from a peace officer," and (b) "attempt[ing] to flee or elude a peace officer by vehicle or other means." UTAH CODE § 41-6a-210(1)(a). But the question presented is not whether the judges of this court would have accepted a request to give such an instruction. It is whether the district judge's failure to give the instruction was error, and whether any such error would have made any difference to the outcome.

¶29 I would affirm on two grounds. First, I would uphold the jury instruction as given on its own terms, as the ordinary meaning of the terms of the instruction adequately conveyed a fair understanding of the *mens rea* issues identified by the majority. Second, I would hold that any purported error in the instruction as given was harmless, having no "'reasonable likelihood'" of affecting the outcome of the proceedings. *State v. Powell*, 2007 UT 9, ¶21, 154 P.3d 788.

¶30 It is an over-generalization to say that "[a] trial court should provide the jury with a mens rea instruction when a criminal statute includes terms that have mens rea implications." *Supra* ¶ 15. Our cases seem to me to stand for a more modest principle. Instead of

broadly mandating separate *mens rea* clarifications of all "terms that have mens rea implications," we have simply required that the jury be fairly and accurately instructed on all elements (whether *mens rea* or *actus reus*) of any offense.[1] And we have hastened to add that "the trial court does not err in refusing to give a requested instruction if the point is properly covered in other instructions presented to the jury."[2]

¶31 The instruction given in this case easily satisfied these standards. First, the instruction conveyed the requirement of *knowledge* of the peace officer's signal. It did so by requiring the jury to find that the defendant "*received* a visible or audible signal from a peace officer." As the majority acknowledges, the *knowledge* requirement is inherent in the common, ordinary understanding of the verb *receive. See supra* ¶ 20 (citing WEBSTER'S NEW COLLEGE DICTIONARY 1195 (2007), defining "receive" as "apprehend mentally; get knowledge of or information about").

¶32 Second, the instruction also conveyed the requirement of *intent* to flee or evade. That requirement was again inherent in the common, ordinary meaning of the terms of the district court's instruction. Here the operative terms are "attempt," which "is 'to try, solicit,' or 'to make an effort to do, get, have, etc.," *supra* ¶ 21 (citing WEBSTER'S NEW COLLEGE DICTIONARY 91 (2007)); and "flee" or "evade," which mean, respectively, "run away or escape," and "avoid or escape from by quickness, cunning, etc.," *supra* ¶ 23 (citing WEBSTER'S NEW COLLEGE DICTIONARY 540, 463).

¶33 The elements of "receiv[ing]" a signal and of "attempt[ing] to flee or elude a peace officer" thus gave the jury a fair and accurate understanding of the *mens rea* elements of the offense of failure to respond under Utah Code section 41-6a-210. The majority's analysis only confirms this conclusion. It does so by reciting the above definitions of the operative terms of the statute—*receive, attempt, flee,* and *evade*—and by conceding that these terms accordingly conveyed the essential notion of the *knowledge* and *intent* elements of the

---

[1] *See State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892 (explaining that we review jury instructions "in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case"); *State v. Roberts*, 711 P.2d 235, 239 (Utah 1985) (stating "the general rule" that "an accurate instruction upon the basic elements of an offense is essential").

[2] *State v. James*, 819 P.2d 781, 799 (Utah 1991).

offense in question. *Supra* ¶ 20 (conceding that "a juror would likely have perceived that the 'receives a visual or audible signal from a peace officer' element of the offense requires knowledge of the peace officer's signal"); *id.* ¶ 23 (acknowledging that "the 'attempt to flee or elude' element implicates an intentional mens rea"). That should be the end of our analysis. The jury was fairly instructed, and we should affirm the conviction on that basis.[3]

¶34 The majority's justifications for overturning the jury verdict are unpersuasive. As to the *knowledge* implications of the instruction given to the jury, I accept that we do not know for certain whether a "juror would recognize the *significance* of" the statutory "knowledge requirement as an essential mens rea element." *Supra* ¶ 20 (emphasis added). But the majority has not identified any sense in which the ordinary meaning of "receive" would fall short of giving the jury a full sense of the *knowledge* element of the offense in question. Instead it has vaguely suggested that the jury *might not get it*, and concluded that "[t]hus it was error" not to provide further explanation in a more detailed instruction. *Supra* ¶ 20. This turns the operative burden of persuasion on its head.

¶35 To succeed in establishing a basis for reversal, *the defendant* bears the burden of demonstrating that the instruction in question falls short of the goal of fairly and accurately stating the law (and of indicating that the error is likely to have made a difference in the outcome, a separate problem discussed below, *infra* ¶ 13). *Powell*, 2007 UT 9, ¶ 21. The court inverts that standard by reversing on the basis of a vague insistence that the jury might not have "recognize[d] the significance" of the instruction's reference to "receiv[ing] a visual or audible signal from a peace officer." *Supra* ¶ 20. I dissent from a decision that seems to me to ignore our cases regarding the operative burden of persuasion.

---

[3] *See Philpot v. State*, 486 S.E.2d 158, 160–61 (Ga. 1997) (dismissing defendant's argument that the trial court improperly failed to define terms "knowingly" and "great risk" because "the terms . . . are ordinary terms found in common usage and understood by people of common and ordinary experience . . . and need not be specifically defined in the charge to a jury"); *People v. McCleod*, 55 Cal.App.4th 1205, 1216 (Cal. Ct. App. 1997) (upholding the inclusion of the common term "residence" in a jury instruction without additional elaboration, stating that a court "need only give explanatory instructions when terms used in an instruction have a technical meaning peculiar to the law" (internal quotation marks omitted)).

¶36 The majority's analysis of the *intent* implications of the instruction in question is similarly problematic. If the ordinary meaning of "attempt to flee or elude . . . requires that the actor leave in an effort to escape or avoid a peace officer," *supra* ¶ 23, then defendant Bird has failed to carry his burden of proof that the instruction as given fell short of giving a fair and accurate description of the law to the jury. That is a sufficient basis for affirming the jury verdict in this case.

¶37 The court does not clearly identify any precise shortcoming of the *intent* implications of the instruction in question. But in discussing the statutory term *attempt*, the court appears to draw a distinction between (a) "[t]he common dictionary definition of attempt," as "to try, solicit, or to make an effort to do, get, have, etc."; and (b) the legal sense of the *inchoate crime of attempt*, which requires "a substantial step toward commission of the crime." *Supra* ¶ 21 (internal quotations omitted). And in discussing this distinction, the court suggests that "the *statutory meaning of attempt* connotes a conscious decision with more specific action than does the common dictionary definition of the term." *Supra* ¶ 21 (emphasis added).

¶38 If the majority is suggesting that the "substantial step" element of the inchoate crime of *attempt* should have been included in the instruction as given, then I dissent from that conclusion. For one thing, I see no basis for treating the failure to stop offense as inchoate. It is not defined in terms of a "substantial step" toward a choate offense. It appears instead to be a crime in itself. So there is no reason to read the "substantial step" sense of an inchoate *attempt* into this state. In any event, that notion of *attempt* was neither preserved in the district court nor argued on appeal. So if the failure to instruct on "substantial step" is the shortcoming that the court sees in the instruction in question, it is a defect of the court's own imagining. And if that is not the problem, then the court has failed to identify any distinction between the common, ordinary sense of the terms of the district court's instruction and the *mens rea* requirements delineated in the majority opinion.

¶39 Finally, even assuming some minor, unarticulated distinction between the ordinary meaning of "receiv[ing] a visual or audible signal" and the *knowledge* required by the majority, or between "attempt[ing] to flee or elude a peace officer" and the *intent* requirement set forth by the court, we should still affirm Bird's conviction on harmless error grounds. Under settled law, Bird bears the burden of establishing that any error in the instruction in question was reasonably likely to affect the outcome in this case. *See*

JUSTICE LEE, dissenting

*State v. Vargas*, 2001 UT 5, ¶ 39, 20 P.3d 271 (stating that it is the defendant's burden to establish that the error is harmful). In my view he has utterly failed to carry that burden. Given the common, ordinary sense of the operative terms of the instruction given to the jury in this case, I would also hold that any arguable shortcoming in failing to elaborate on the *mens rea* elements of the offense was harmless.

_____