**2019 UT App 189**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RYAN ANDREW GROVER,
Appellant.

Opinion
No. 20180378-CA
Filed November 21, 2019

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 171911268

Teresa L. Welch and Dayna K. Moore, Attorneys
for Appellant

Sean D. Reyes and Thomas Brunker, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

MORTENSEN, Judge:

¶1     Around midnight, two cars raced down Little Cottonwood Canyon, doing 62 in a 40. An officer attempted to stop the drivers—one of whom was Ryan Andrew Grover—but Grover sped off while the other driver stopped and later gave Grover's name and phone number to the officer. The officer arrested Grover at his house the next day for failing to stop, and the jury convicted him. Grover contends that the evidence is insufficient to prove that he knowingly received the officer's signal to stop. But Grover's contention collides with the jury's

reasonable inference that Grover indeed knew the officer was signaling for him to stop. We affirm.

BACKGROUND[1]

¶2     Around midnight on a fall evening, an officer was driving up Little Cottonwood Canyon when he saw two cars racing down the canyon toward him. Upon estimating that their speeds were 60 miles per hour (MPH) in the 40-MPH zone, the officer employed his radar gun and detected that Grover was driving 62 MPH. Intending to stop the cars, the officer activated his emergency lights when the cars were about 150 feet in front of him. There were no other cars on the road. With the officer's brightly flashing red and blue lights in the night's dark sky, the second driver slammed on his brakes and pulled over about forty feet before reaching the officer. But Grover continued speeding. As Grover passed the officer, the officer heard Grover rev his engine and estimated that Grover accelerated to about 75 MPH. The officer made a U-turn and pursued Grover, but he had to discontinue his chase due to a department policy against pursuing fleeing suspects in the canyons at dangerously high speeds.

¶3     The officer then returned to the other driver's car to investigate. After some questioning, the driver indicated that Grover was his friend and agreed to tell the officer who Grover was, disclosing Grover's name and phone number. The driver

---

1. "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly. We present conflicting evidence only when necessary to understand issues raised on appeal." *State v. Tulley*, 2018 UT 35, ¶ 4 n.1, 428 P.3d 1005 (cleaned up).

then asked, "Is there anything else I can do?" The officer responded, "[Y]ou should probably call your buddy and tell him to come back here." The driver called Grover and told him that the officer was there and that he should come back, but Grover refused to return.

¶4 The next day, the officer went to Grover's home. Upon arriving, the officer noticed the same car that he had seen the night before racing down the canyon now parked in the driveway. Grover answered the door, and the officer asked him why he did not stop the night before. Grover replied, "Was that you?" The officer confirmed that it was and again asked why Grover did not stop. Grover said he didn't feel he was doing anything wrong. The officer countered by asking Grover why, if he had not done anything wrong, he did not stop. Grover replied this time, "I didn't want to waste my time."

¶5 The officer arrested Grover, and the State charged him with one count of failure to respond to an officer's signal to stop. At trial, the State called two witnesses—the other driver and the officer—who testified about these events. Defense counsel moved for a directed verdict, but the district court denied the motion. Grover neither called any witnesses nor did he testify. The jury convicted Grover, and he now appeals.

ISSUE AND STANDARD OF REVIEW

¶6 The lone issue on appeal is whether there was sufficient evidence for the jury to conclude that Grover knowingly received an officer's signal to stop. "On a sufficiency of the evidence claim we give substantial deference to the jury." *State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664. "We review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645 (cleaned up). "We may reverse a

verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *Id.* ¶ 46 (cleaned up).

ANALYSIS

¶7     In its case against Grover, the State had to prove that Grover *knowingly* received an officer's signal to stop. *State v. Bird*, 2015 UT 7, ¶ 26, 345 P.3d 1141. A person engages in conduct knowingly "when he is aware of the nature of his conduct or the existing circumstances . . . [or] when he is aware that his conduct is reasonably certain to cause the result." Utah Code Ann. § 76-2-103(2) (LexisNexis 2017). Grover contends that the jury's verdict was based on speculation and unreasonable inferences. We disagree.

¶8     "It is a well-settled rule that circumstantial evidence alone may be sufficient to establish the guilt of the accused." *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 11, 358 P.3d 1067 (cleaned up). "[T]he difference between an inference and speculation depends on whether the underlying facts support the conclusion. A jury draws a reasonable inference if there is an evidentiary foundation to draw and support the conclusion." *Id.* ¶ 12. "A jury's inference is reasonable unless it falls to a level of inconsistency or incredibility that no reasonable jury could accept." *State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664 (cleaned up). We conclude that the jury reasonably inferred that Grover was aware of the officer's signal for him to stop.

¶9     Grover specifically argues that he could not have reasonably known that the officer intended for him to stop because the officer was traveling in the opposite direction, stopped another car, and did not contact him until the following

day. However, this ignores the significant countervailing evidence upon which the jury could reasonably base its inference.

¶10    Grover's initial reaction indicated that he was aware of the officer's signal for him to stop. As Grover passed the officer with his brightly flashing emergency lights—something that would be very difficult not to notice on that dark night—Grover did not simply continue at his current, excessive speed. Instead, he accelerated so significantly that the officer heard his engine rev and estimated that Grover increased his speed to 75 MPH. This was approximately 13 MPH faster than Grover was driving when the officer first turned on his lights and a total of 35 MPH over the speed limit. And even after the officer completed his U-turn and began to pursue him, Grover continued driving down the canyon at such a dangerously high speed that the officer had to cease his pursuit. These circumstances lead to a reasonable inference that Grover saw the officer's lights and was aware that a law enforcement officer was signaling for him to stop. *Cf. State v. Lowe*, 2005 ME 23, ¶ 12, 868 A.2d 168 (holding that the evidence was sufficient for the jury to infer that the defendant knowingly failed to stop despite an officer's signal when the officer was going in the opposite direction, activated his lights, turned around to follow the defendant, and the officer's emergency lights were visible in the defendant's rearview mirror).

¶11    Grover's later responses to the situation also provided evidence of his awareness that the officer signaled for him to stop. At the officer's direction, the other driver called Grover on the phone and told him that the officer was there and that Grover should come back. But Grover refused to return. And the next day, when asked by the officer why he did not stop, Grover never claimed to be unaware of the officer or the meaning of his signal. Rather, Grover asked, "Was that you?" And only after being asked again, Grover said he did not feel he was doing

anything wrong and "didn't want to waste [his] time" by stopping. Grover's claims of innocence conflict with the facts that he was driving 22 MPH over the speed limit initially and increased his speed to approximately 35 MPH in excess of the speed limit as he passed the officer's flashing lights. Under these circumstances, a more reasonable inference—and the one the jury made—is that Grover was aware that the officer signaled for him to stop.

¶12   Even though Grover argues that the facts support an alternative inference—that he thought the officer was responding to an unrelated emergency—his argument incorrectly veers around our standard of review and the facts of this case. On a sufficiency of the evidence review, we consider whether no reasonable jury could infer what this jury did, not whether there is another plausible inference. *Ashcraft*, 2015 UT 5, ¶ 18 ("A jury's inference is reasonable unless it falls to a level of inconsistency or incredibility that no reasonable jury could accept." (cleaned up)). Moreover, Grover's suggested theory is dubious under these circumstances. Again, Grover's initial reaction was to accelerate and speed away from the officer in pursuit, rather than pull over and allow the officer to arrive more easily at the supposed unrelated emergency. And there was no evidence of any other cars on the road except the racers. Nor was there any evidence of an unrelated emergency.

CONCLUSION

¶13   We hold that there is sufficient evidence to support the jury's conclusion that Grover knowingly received the officer's signal to stop, and we therefore affirm his conviction.

_____