The STATE of Utah, Plaintiff
and Respondent,

v.

Grant ·A. RAMMEL, Defendant
and Appellant.

No. 19439.

Supreme Court of Utah.

June 27, 1986.

Frances M. Palacios, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals from his conviction on a charge of aggravated robbery, a first degree felony under U.C.A., § 76–6–302 (Repl.Vol. 8B, 1978 ed.).

On October 8, 1982, at approximately 9:00 a.m., Aldon Herman, General Manager of Amelia's Restaurant, was severely clubbed by an assailant as he descended the back stairs of an airport terminal building with the previous day's receipts in a bank bag. Herman fought the assailant off and yelled for help. George Magers, an electronic technician working nearby, observed a young man carrying a club break through some glass doors, jump off a loading dock, and flee from the area. He found Herman but pursued the assailant when other people came to Herman's aid. Magers memorized the license number of a car speeding from the scene carrying the assailant. The police located David Dyson, owner of the vehicle, who initially denied any involvement in the aggravated robbery. He later admitted that he had been the driver of the getaway car and identified defendant as Herman's assailant.

At trial, Dyson, under a grant of immunity from prosecution, testified for the State that he, defendant, and another man had planned the robbery for more than a week. Dyson testified that he had taught defendant how to knock out a person with a club, had driven defendant to the scene of the robbery, had waited in the car while defendant executed the assault, and had driven defendant away from the scene after defendant ran out of the building. Herman testified that defendant's physical charac-teristics resembled those of the assailant and that Dyson did not appear to be the man who assaulted him. Magers corroborated these statements. Defendant took the stand and testified that he had been at Denny's Restaurant on the morning of the robbery, that Dyson had dropped him off there, that he had met his ex-girlfriend, and that Dyson had continued on to Amelia's Restaurant to commit the robbery.

I

■ Defendant challenges the trial court's refusal to allow full cross-examination on Herman's pending civil suit against defendant. As a result, he claims to have been deprived of his sixth amendment rights to confront his accuser and explore the witness/victim's bias. Defendant contends that pursuit of such questioning would have undermined Herman's credibility with the jury and disclosed a possible motive to testify untruthfully. Defendant advances *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) (protection of witness from retaliation does not outweigh defendant's right to cross-examination), in support of his argument. We agree that the trial court erred, but conclude that the error was harmless.

■ Under Rule 20 of the Utah Rules of Evidence, which was in effect at the time of defendant's trial, extrinsic evidence relevant upon issues of credibility is admissible.[1] Although the trial court has discretion in limiting cross-examination, this Court has been careful to allow wide latitude for examination in the areas of bias and motive. *State v. Maestas*, 564 P.2d 1386, 1388 (Utah 1977). However, we will not set aside a verdict because of the erroneous exclusion of evidence unless a proffer of evidence appears of record, and we

---

1. The Rule provided in pertinent part: "[F]or the purpose of impairing or supporting the credibility of a witness, any party including the party calling him may examine him and introduce extrinsic evidence concerning any statement or conduct by him and any other matter relevant upon the issues of credibility." On April 13, 1983, we adopted the new Utah Rules of Evidence, effective September 1, 1983. The Rules pertaining to impeachment of witnesses are now found in Rules 607 through 610. Rule 608(c) expressly allows extrinsic evidence of bias.

believe that the excluded evidence would probably have had a substantial influence in bringing about a different verdict. Utah R.Evid. 5 (superseded Sept. 1, 1983).[2] Where it is unlikely that the excluded testimony prejudiced the defendant's rights in a substantial manner, the error is harmless and the case is not subject to reversal. *See State v. Salmon,* 612 P.2d 366, 370 (Utah 1980). "Courts have found no prejudice where information that may be brought out by further questioning was already before the jury either from the testimony of others or by implication from the witness' own testimony." *Maestas,* 564 P.2d at 1389 (footnote omitted). *See also, State v. Hutchison,* 655 P.2d 635, 636–37 (Utah 1982) (finding harmless error under Rule 30 of the Utah Rules of Criminal Procedure where information was before the jury without improperly excluded report); *State v. Burris,* 131 Ariz. 563, 566–67, 643 P.2d 8, 11–12 (Ariz.Ct.App.1982) (finding harmless error in limiting cross-examination concerning witness's preparation of a civil suit against defendant where bias and prejudice of the witness were evident to the jury from other facts before it). *But see State v. Hubbard,* 297 Or. 789, 802, 688 P.2d 1311, 1320–21 (1984) (affirming finding of prejudicial error from exclusion of cross-examination where police officer's critical testimony was directly in conflict with defendant's testimony, and cross-examination could have established police officer's bias or interest and affected the outcome of the trial).

■ Here the jury was well aware of Herman's possible motivation for testifying as he did. On direct examination Herman was questioned about the extent of the injuries he received from the clubbing, including nerve damage, ear blockage, speech impairment, vertigo, and resulting nausea. At the time of trial, he was still under the care of an eye, nose, and ear specialist, a neurosurgeon, and a psychiatrist. On cross-examination, Herman admitted that he had been through a lot of

pain and suffering and that he had some very angry feelings about what had happened. The jury also heard, and was not told to ignore, the question posed as to whether Herman had instituted civil proceedings against defendant. We therefore conclude that although it was error to limit the cross-examination as to Herman's bias and motive, the error was not prejudicial because additional cross-examination would not have had a substantial influence in bringing about a different verdict.

## II.

Defendant next claims that the trial court erred in permitting Detective Welti to testify that he did not consider it unusual for Dyson to lie to him when Dyson was first interrogated. Based on his experience interviewing several hundred criminal suspects, Detective Welti testified at trial that no criminal suspect ever admitted "right off the bat" to committing a crime. He then proceeded to give the opinion that because most suspects lie when initially questioned by police, it would not have been "unusual" for Dyson to lie during the first police interrogation. The trial court held that Detective Welti was an expert apparently qualified to testify on Dyson's capacity for telling the truth and admitted the evidence. That ruling was erroneous for several reasons.

■ First, the testimony was not admissible under the applicable evidentiary rules and statute. Although a witness's credibility may always be impeached,[3] the impeaching evidence must go to *that* individual's character for veracity. *See* Utah R.Evid. 20 (U.C.A., Repl.Vol. 9B, 1977 ed.) (superseded Sept. 1, 1983); U.C.A., 1953, § 78–24–1 (Repl.Vol. 9A, 1977 ed.). Detective Welti's testimony did not relate to Dyson's character for veracity, but instead invited the jury to draw inferences about Dyson's character based upon Welti's past experience with other suspects. Therefore, the testimony was inadmissible.

---

**2.** The substance of Rule 5 is now found in Utah Rule of Evidence 103.

**3.** *See supra* note 1.

Second, the trial judge abused his discretion in admitting the evidence as expert testimony because its foundation was utterly lacking. There was no showing that the anecdotal data from which the detective drew his conclusions had any statistical validity. Nor was there any evidence to establish that Detective Welti's experience uniquely qualified him as an expert under Rule 56 of the Rules of Evidence to give such testimony.[4] Absent such showings, Welti's opinions lacked sufficient foundation to be admitted.

Finally, even if the testimony was proper impeachment evidence, it should have been excluded because its potential for prejudice substantially outweighed its probative value. Utah R.Evid. 45 (superseded Sept. 1, 1983).[5] In this case, the prosecution attempted to establish, in effect, that there was a high statistical probability that Dyson lied. Even where statistically valid probability evidence has been presented—and Welti's testimony hardly qualifies as such—courts have routinely excluded it when the evidence invites the jury to focus upon a seemingly scientific, numerical conclusion rather than to analyze the evidence before it and decide where truth lies. *See, e.g., People v. Collins*, 68 Cal.2d 319, 438 P.2d 33, 40–41, 66 Cal.Rptr. 497, 504–05 (1968). Probabilities cannot conclusively establish that a single event did or did not occur and are particularly inappropriate when used to establish facts "not susceptible to quantitative analysis," such as whether a particular individual is telling the truth at any given time. *See Boucher v. Bomhoff*, 495 P.2d 77, 84 (Alaska 1972) (Erwin, J., concurring). *See also State v. Steward*, 34 Wash.App. 221, 223–24, 660 P.2d 278, 279–80 (1983) (reversible error to admit a pathologist's "expert" testimony that "serious injuries to children were often inflicted by either live-in or babysitting boyfriends" in the murder prosecution of a babysitting boyfriend). *Cf. State v. Sims*, 3 Ohio App.3d 321, 325, 445

N.E.2d 235, 240 n. 6 (1981) (assuming statistics were available, statistical likelihood of eyewitness to err would not assist the trier of fact to determine whether a particular eyewitness was telling the truth).

Despite the error of admitting Detective Welti's testimony, its admission was harmless in view of the other evidence supporting defendant's conviction.

## III.

The State offered in evidence a driver's license photograph of Dyson to show that Dyson could not have been the assailant described by the victim. Defendant objected to the admission of the photograph on the grounds of relevancy, stating that the picture was taken in February of 1981 and Dyson was not interrogated until October of 1982. Detective Welti testified that Dyson looked very similar to the photograph both on the day of his interrogation and on the day of trial. With that foundation before it, the trial court was well within its discretion to admit the photograph as relevant to the identification of the robber. *Cf. State v. Anderson*, 561 P.2d 1061, 1063 (Utah 1977) (trial court given broad discretion concerning receipt of evidence), *overruled on other grounds, State v. Chavez*, 605 P.2d 1226, 1228 (Utah 1979).

## IV.

In his final point on appeal, defendant claims that the cumulative impact of the inadmissible testimony and evidence created reversible error. In support he cites *State v. St. Clair*, 3 Utah 2d 230, 282 P.2d 323 (1955), and *Gooden v. State*, 617 P.2d 248 (Okla.Crim.App.1980). However, those cases are distinguishable, inasmuch as numerous irregularities there tended to prejudice the rights of those defendants. " 'Cumulative error' refers to a number of errors which prejudice defendant's right to

---

4. Rule 56 has been superseded and replaced in substance by Rules 702 through 704 of the new Utah Rules of Evidence, effective September 1, 1983.

5. The substance of Rule 45 may now be found in Rule 403 of the new Utah Rules of Evidence.

a fair trial." *State v. McKenzie,* 186 Mont. 481, 608 P.2d 428, 448, *cert. denied,* 449 U.S. 1050, 101 S.Ct. 626, 66 L.Ed.2d 507 (1980). Since we hold that no substantial errors were committed, the doctrine does not apply. *See Id.*

The judgment of the trial court is affirmed.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.