2020 UT App 98

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JAMIE ERNESTO NUNEZ-VASQUEZ,
Appellant.

Opinion
No. 20160794-CA
Filed June 25, 2020

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 141900845

Nathalie S. Skibine, Attorney for Appellant
Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion, in which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Jamie Ernesto Nunez-Vasquez (Defendant) challenges his conviction for forcible sodomy. With respect to the exclusion of evidence of the victim's past sexual history, Defendant argues that the trial court violated his constitutional rights and that his trial counsel rendered ineffective assistance. Defendant further contends that the court erred in declining to give a requested mistake-of-fact jury instruction. Lastly, he raises other ineffective assistance claims related to arguing the rules of evidence, failing to exclude Defendant's statements, and failing to object to certain testimony. We affirm.

## BACKGROUND[1]

*Sexual Assault*

¶2    In October 2013, a man (Victim) went to a house party with a gay friend and began drinking any alcoholic drink "that [he] could get a hold of." There, Victim met, for the first time, Defendant and another man (Friend), who both identify as gay. Victim, Friend, and Defendant then left the house party together and continued drinking at a bar. After a quick stop at Friend's apartment, the trio went to a night club, where the heavy drinking continued.

¶3    Throughout the night, Victim drank "alcohol in excess," and "if somebody gave [him] alcohol, [he] would drink it." Defendant heard Victim say at one point that he "identified as straight." After the partying and drinking had ended, the trio returned to Friend's apartment, even though Victim "had wanted to go home." When they arrived at the apartment, at about 5:00 a.m., Victim took off his shirt and "passed out, blacked out" on the couch.

¶4    The next thing Victim remembered was waking up on the floor of a "random apartment." His pants and underwear were pulled down to his ankles, and Defendant, "someone [he] hardly knew," was fondling him. Victim "broke free" and felt pain and lubricant in his rectum, the latter sensation being consistent with a container of personal lubricant sitting on a nearby table. Victim immediately went outside and called the police, reporting that he had been raped. This call was made at 11:43 a.m. When

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

officers arrived, they found Victim outside "pacing around," "visibly upset," and talking "loud" and "fast."

¶5     When Defendant, who was also outside, was identified as the suspect, he "turned and started to walk away." The officers told him to stop and proceeded to detain him and place him in handcuffs. Defendant was informed by an officer that he was not yet under arrest. An officer recited the *Miranda* rights from memory, forgoing use of the printed card he carried and believing that he "got it pretty close to being right." *See generally Miranda v. Arizona*, 384 U.S. 436 (1966). An officer next asked him, "Having these rights in mind, do you wish to talk to me now?" Defendant responded, "Sure," and proceeded to talk with the officer. The officer asked Defendant if it was true that he was lying behind Victim fondling him, to which Defendant responded that it was. The officer then asked Defendant if he had sex with Victim. Defendant said that "he didn't know." But when asked why he thought Victim "was open to sex with another man," Defendant replied that "he thought it was mutual because they were close."

¶6     Victim was transported to the hospital and examined by a sexual assault nurse examiner (Nurse). Later in the day, Defendant was taken to a holding room and interrogated by a different officer. Defendant told the officer that he was not sober but responded affirmatively when asked if he could speak clearly and "recall the events that took place" the night before. Defendant also asked if he needed an attorney. The officer responded, "[I]f you'd like an attorney then that's up to you" and, "[Y]ou waived your rights [earlier], meaning that you agreed to talk with [us], that's why at this point I'm just trying to ask you [if] you understand those rights." Defendant answered, "I do." Finally, Defendant asked if he had to answer questions if he did not "feel comfortable." The officer told him that he did not have to answer the questions and asked him if he needed to

read him his rights again, to which Defendant replied, "No, I understand."

¶7     During the interrogation, Defendant stated that he did not think Victim was gay but that he has "a thing for straight guys" and that "it's attractive to [him]" and a "challenge, getting a straight guy" to have sex with him. Defendant also said, "Just because a guy tells me that [they're] straight doesn't mean that . . . they don't want to [have sex]." He explained that he has "had sex with plenty of straight men." Defendant then admitted that he removed Victim's pants, had sex with Victim, and fondled him but believed that Victim was "completely awake" and consenting.

¶8     Defendant was subsequently charged with forcible sodomy.

*Legal Proceedings*

¶9     At the preliminary hearing, Victim testified that he had a girlfriend, was not gay or bisexual, and had never had sex with a man. Defendant's trial counsel subsequently filed a motion under rule 412 of the Utah Rules of Evidence seeking to admit evidence at trial of Victim's "sexual behavior or predisposition," specifically that "Defendant ha[d] male witnesses that w[ould] testify that they ha[d] engaged in sexual activity with [Victim]." Trial counsel argued, "The exclusion of this line of questioning will violate . . . Defendant's constitutional rights to confront and cross-examine [Victim] under the Confrontation Clause." Trial counsel also asserted that Defendant should be able to confront Victim with the sexual-behavior evidence under rule 608(c) of the Utah Rules of Evidence to impeach Victim's testimony given at the preliminary hearing that he was straight.

¶10     The State argued that such evidence was inadmissible because rule 412 prohibits the admission of evidence of a

victim's prior sexual activity or predisposition to prove consent and rule 608 forbids the use of extrinsic evidence to prove specific instances of conduct to attack a witness's character. The State did not specifically address Defendant's argument that evidence of Victim's prior sexual behavior was admissible under rule 608(c). The court agreed with the State and denied the motion but left open the possibility that Defendant might seek admission of the evidence at trial if Victim opened the door by testifying that he was not gay and thus would not have consented. Trial counsel replied that he "underst[oo]d the ground rules" and otherwise had "no response."

¶11 Before trial, Defendant filed a motion seeking to have his custodial statements suppressed because he "clearly indicated that he was not sober and that he did not feel comfortable answering questions." The trial court denied the motion, finding that Defendant had "an understanding of his rights and chose to speak to the officer."

¶12 At trial, Victim testified that he had "some problems with [his] memory" of the sexual assault because approximately a year after the assault, he was in a motorcycle accident that placed him in a coma and "caused [him] to lose all [his] long-term and short-term memory." After Victim described the circumstances of the sexual assault to the best of his recollection, *see supra* ¶¶ 2–4, the State asked Victim, "Do you remember flirting with [Defendant] that night?" Victim responded, "I definitely would have never done that." The State followed up: "[D]o you have any independent memory of that?" Victim responded, "I did not do such behavior." Then the State asked, "Do you remember if you ever had conversation with [Defendant] that night about having sex?" Victim answered, "I did not have such conversation." On cross-examination, trial counsel questioned Victim, "Isn't it true that you don't remember what you said or did with my client at any location that you were at that evening [i.e., the night preceding the sexual

assault]?" Victim responded, "I would know if I would have given consent."

¶13    Nurse, who first examined Victim, then testified. The following exchange took place during her testimony:

> [State]: Now, did [Victim] tell you that he had remembered being sexually assaulted?
>
> [Nurse]: No.
>
> [State]: Did that concern you?
>
> [Nurse]: No.
>
> [State]: Why's that?
>
> [Nurse]: It's very common that either due to alcohol, drugs or just the traumatic experience, a lot of people will not have any real recollection or they don't know a lot of detail about what happened. It's just part of trauma.
>
> [State]: Now, in this case, did [Victim] give you any indication in the history that would explain why he wasn't able to remember?
>
> [Nurse]: No, just the fact that he said he had several drinks and he wasn't sure what was in them. That can be a red flag for maybe possibly that someone put drugs in his drink, which can happen. So it just kind of went along with what maybe could have happened from his story with drinking.
>
> [State]: What about just alcohol?

[Nurse]: Sure.

[State]: Could just alcohol consumption?

[Nurse]: Oh yeah, of course.

¶14    On cross-examination, trial counsel asked Nurse if she was able to tell if the sex was consensual or not. Nurse answered that she could not because "[t]hat's not part of [her] job. [She is] just there to document injury and say that it could have come from assault but it may not have."

¶15    Defendant testified on his own behalf. He testified that Victim was "an acquaintance" and the day of the sexual assault was the "second or th[ird] time [they had] met." Defendant was "really intoxicated," but he remembered seeing Victim "tak[e] his shirt off" and "[lying] down on the couch with [Victim]." Defendant further testified that they ended up on the floor and that Victim was "hard and pressing into [him] and grinding into [him]." He also claimed that "after [Victim] pressed into [him]," the next thing he remembered was being "in the opposite direction spooning and [Victim] was pressing" backward against him, signaling to Defendant that Victim "clearly wanted to have sex." He further testified that he "had no reason to believe that [Victim] was unconscious" because "[Victim] was moaning a little bit" and "pressing into" him. When asked if he had asked Victim if he wanted to have sex, Defendant replied, "I [didn]'t feel like we were in that situation where he needed to ask me, if he was cuddling me. I think it was pretty clear. He was all over me when I woke up."

¶16    At one point, trial counsel asked if Defendant spoke with the officer at the scene "voluntarily." Defendant answered that he "was a little bit confused." The State objected, and Defendant's response was stricken. Trial counsel continued and asked Defendant why he initially told the officer that he did not

know if he had sex with Victim, and Defendant responded it was because he "didn't want to talk to him" since he "didn't know what was going on." Trial counsel also asked Defendant if he was handcuffed and if the officer was in uniform. Defendant responded affirmatively to both questions. Trial counsel then asked if "anybody offer[ed] [him] water or something to eat" once he was taken to the police station. Defendant said "[n]ot for a while" and that "[t]hey didn't offer [him] water until he was about to [be] interview[ed]." The State objected and at a sidebar stated, "It seems like every question seems to be going to whether his statement was involuntary or whether he was forced into it . . . . That's all been litigated and it's the judgment of this Court, not the jury." The court asked for a response from trial counsel, who conceded, "[The State] might have a point there."

¶17 During cross-examination, Defendant stated that before he put his penis into Victim's anus, "[Victim] was pressing his penis into [him]" and that at this point, he was in front of Victim. The State then asked if it was correct that Defendant never told the officers on the day of the sexual assault that he was in front of Victim or "that [Victim] was pressing his penis into [him]." Defendant responded that he "wasn't comfortable talking to these officers." The court then intervened and told Defendant to "please listen very closely to the question" and that he could "answer that question . . . with a yes or a no." Defendant then answered that he did not tell the officers that Victim had done that.

¶18 Trial counsel proposed three jury instructions supporting a mistake-of-fact defense. The trial court refused to give those instructions and provided the jury with the court's own instructions that were "a little easier . . . to understand," while including, in the view of the trial court, "everything [trial counsel was] asking for."

¶19 The jury convicted Defendant of forcible sodomy, and the court sentenced him to five years to life in prison. Defendant appealed.

*Appeal and Rule 23B Remand*

¶20 Through new counsel on appeal, pursuant to rule 23B of the Utah Rules of Appellate Procedure, Defendant filed a motion alleging ineffective assistance of trial counsel and seeking a remand to develop facts on trial counsel's alleged ineffective assistance. Specifically, Defendant alleged that trial counsel was ineffective when he "moved to admit evidence of Victim's sexual behavior under Utah Rule of Evidence 412, but did not provide the name of the witness, a detailed proffer of his testimony, or a complete explanation of why it was critical to the defense." Defendant also claimed that trial counsel rendered ineffective assistance in failing to renew his rule 412 motion when Victim stated at trial that he "definitely would have never" flirted with Defendant, that he "did not do such behavior," and that "[he] would know if [he] would have given consent."

¶21 As part of his rule 23B motion, Defendant attached an affidavit from a male individual who stated that he would testify that he knew Victim and that Victim had previously made a sexual advance toward him. This individual also affirmed that he had spoken to trial counsel and was willing to testify at Defendant's trial.

¶22 This court granted Defendant's motion and temporarily remanded the matter to the trial court to take evidence and make a record regarding trial counsel's alleged failure to provide a detailed proffer and to not renew the rule 412 motion after Victim testified. On remand, the trial court heard testimony from trial counsel and two male witnesses. The two male witnesses testified that Victim was known to engage in flirtatious behavior with men and that Victim previously made sexual advances

toward them. Trial counsel testified that he had interviewed three men (the two who testified at the remand hearing and one other) about Victim's "sexual predispositions." When asked whether Victim's responses during trial opened the door to renew the rule 412 motion, trial counsel responded that "maybe it just didn't strike" him to renew it and "[m]aybe [he] was distracted" because "there were so many things going on in that trial." But trial counsel stated that even with the benefit of hindsight, he was unsure if those responses "actually open[ed] the door."

¶23   At the conclusion of the hearing, the trial court found that trial counsel (1) "did not perform deficiently because a more detailed proffer would not have changed the pre-trial ruling" and (2) "reasonable counsel could decide that [Victim]'s trial testimony did not open the door to the proposed impeachment." The matter is again before us.

ISSUES AND STANDARDS OF REVIEW

¶24   Defendant's appeal raises three issues arising from the exclusion of Defendant's rule 412 evidence. First, Defendant argues that the trial court violated his constitutional rights to confrontation by excluding crucial evidence of Victim's sexuality under rule 412 of the Utah Rules of Evidence. It is well-settled that our appellate courts generally review evidentiary matters for an abuse of discretion. *See State v. Tarrats*, 2005 UT 50, ¶ 16, 122 P.3d 581 ("We will not reverse the trial court's ruling on evidentiary issues unless it is manifest that the trial court so abused its discretion that there is a likelihood that injustice resulted." (quotation simplified)). But the standard of review is different when a defendant's evidentiary challenge is based on constitutional rights to confrontation. That is, "when reviewing a trial court's decision to limit cross-examination, we review the legal rule applied for correctness and the application of the rule

to the facts of the case for an abuse of discretion." *State v. Marks*, 2011 UT App 262, ¶ 11, 262 P.3d 13 (quotation simplified).

¶25    Second, Defendant contends that trial counsel rendered ineffective assistance of counsel by failing to "support his rule 412 motion with a detailed proffer." And third, Defendant argues trial counsel was ineffective when he failed to renew his rule 412 motion when Victim stated at trial that he "definitely would have never" flirted with Defendant, that he "did not do such behavior," and that he "would know if [he] would have given consent." "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified). "However, if a trial court has previously reviewed the ineffective assistance of counsel claim, an appellate court is free to make an independent determination of a trial court's [legal] conclusions, though the factual findings of the trial court shall not be set aside on appeal unless clearly erroneous." *State v. Kozlov*, 2012 UT App 114, ¶ 29, 276 P.3d 1207 (quotation simplified).

¶26    Defendant additionally claims that the trial court "erred when it declined to give [his requested] mistake-of-fact [jury] instruction on consent." "We review a district court's refusal to give a jury instruction for abuse of discretion." *State v. Karren*, 2018 UT App 226, ¶ 18, 438 P.3d 18. "But in certain circumstances, the court's discretion will be strictly cabined. For instance, a criminal defendant is generally entitled to have the charged offense defined for the jury." *Miller v. Utah Dep't of Transp.*, 2012 UT 54, ¶ 13, 285 P.3d 1208.

¶27    Defendant also raises three more claims of ineffective assistance of counsel. Defendant first argues that trial counsel was ineffective for not correctly arguing the rules of evidence in

attempting to admit evidence of the circumstances of Defendant's interrogation, which the trial court prohibited.[2]

---

2. Defendant asks us to review this claim on the merits and find that the trial court "erred when it sustained the State's objection to [his] testimony explaining the circumstances of his police interview." In the alternative, Defendant asks us to review the claim for ineffective assistance of counsel if we determine that it was not preserved. The State argues that trial counsel invited the error, if any, and we can review this claim only for ineffective assistance of counsel. We agree with the State.

An issue is not preserved for appeal if a party invited the trial court to err. "Under the doctrine of invited error, an error is invited when counsel encourages the trial court to make an erroneous ruling." *State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699. "[W]e have traditionally found invited error when the context reveals that counsel independently made a clear affirmative representation of the erroneous principle." *Id.* ¶ 18.

On cross-examination of the officer who interrogated Defendant, trial counsel asked if there "was a complete *Miranda* warning" given. The State objected, stating, "*Miranda*'s not an issue for the jury. That's a legal issue. That's not a jury issue." Trial counsel then responded, "okay," and continued with the cross-examination. On direct examination of Defendant, trial counsel attempted multiple times, with sustained objections, to elicit testimony from Defendant about the circumstances surrounding his interrogation. Then at a sidebar, the State argued, "It seems like every question seems to be going to whether his statement was involuntary or whether he was forced into it. That's all been litigated and it's the judgment of this Court, not the jury." Trial counsel then responded, "[The State] might have a point there," and stopped asking questions about the interrogation.

Thus, Trial counsel invited any error the trial court could have made because not once did he argue to the court any legal

(continued…)

Second, Defendant asserts that trial counsel was "ineffective for failing to exclude [his] comment that Victim was straight and that [Defendant] had 'a thing for straight guys.'" Third, Defendant contends that trial counsel "was ineffective when he failed to object to [Nurse's] testimony that [Victim]'s purported failure of memory was a common effect of trauma."[3]

---

(…continued)
basis for the appropriateness of his line of questioning and, more importantly for invited error purposes, his only response to the State's objections were "okay" and "[the State] might have a point there." These statements communicated to the court that trial counsel believed the State's position was legally correct and led the court to whatever error the trial court could have made. Because trial counsel invited the error, if any, we will review this claim only for ineffective assistance of counsel.

3. Defendant also claims that "the cumulative effect of [the] multiple errors was prejudicial," "which requires us to apply the standard of review applicable to each underlying claim of error." *See Radman v. Flanders Corp.*, 2007 UT App 351, ¶ 4, 172 P.3d 668. "A reviewing court will reverse a jury verdict under the cumulative error doctrine only if the cumulative effect of the several errors undermines confidence that a fair trial was had." *State v. Killpack*, 2008 UT 49, ¶ 56, 191 P.3d 17 (quotation simplified), *abrogated on other grounds as recognized by State v. Lowther*, 2017 UT 34, 398 P.3d 1032. Because we discern no error that could have harmed Defendant, there is no error to accumulate, and we decline to address this claim. *See State v. Martinez-Castellanos*, 2018 UT 46, ¶ 35, 428 P.3d 1038 ("The cumulative error doctrine applies only to errors that could conceivably harm a party in some way. Errors with no potential for harm do not accumulate.").

## ANALYSIS

### I. The Trial Court's Exclusion of Rule 412 Evidence

¶28 Defendant contends that the trial court abused its discretion when it excluded evidence of Victim's prior sexual behavior or predisposition, which was "critical to [his] defense."[4]

---

4. The State argues that trial counsel invited error, if any, when he "ended up agreeing with the State before the court ruled" and that we can therefore review this issue only for ineffective assistance of counsel. Specifically, the State contends that after the court summarized the State's argument, trial counsel "said that he 'understood the ground rules' and had 'no response.'" The trial court then said, "Well, if that's the case, then that's the ruling. And the ruling obviously is that that wouldn't come in unless and until that door's opened either by [the State] or [Victim]."

The State asserts that "[t]he court's ruling shows that counsel's 'no response' statement led the trial court to believe that defense counsel had no legally supportable opposition to the State's position." We disagree. After trial counsel made his argument, the State and the trial court discussed rule 412 at length, with the court saying multiple times that the State's argument was "correct" and that the court "agreed" with the State before trial counsel acquiesced in the court's conclusions. The only party that could have led the court to commit error in this scenario was the State. Trial counsel had made his argument and earlier had filed a motion to admit the evidence, claiming its exclusion would "violate the Defendant's constitutional rights to confront and cross examine [Victim]." And by the time he said that he "underst[oo]d the ground rules" and "had no response," it was clear that the court believed that any evidence of Victim's sexual past could come in only if Victim or the State opened the door. By simply stating that he "underst[oo]d the ground rules"

(continued…)

He claims that this ruling violated his Sixth Amendment right to present a complete defense and to cross-examine Victim. Specifically, he contends that this evidence was "critical" to his defense because it would undermine Victim's credibility, show that Victim had "a motive to lie about consensual homosexual activity," and show that "a man who was sexually attracted to other men would be more likely to give indications of consent to sexual activity, even if he was too drunk to remember the incident later."

¶29 Rule 412 of the Utah Rules of Evidence prohibits the admission at trial of "evidence offered to prove that a victim engaged in other sexual behavior" or "evidence offered to prove a victim's sexual predisposition." Utah R. Evid. 412(a). Such evidence is generally barred because "an alleged victim's prior sexual conduct is simply not relevant to any issue in [a] rape prosecution including consent." *State v. Tarrats*, 2005 UT 50, ¶ 21, 122 P.3d 581 (quotation simplified); *see also State v. Johns*, 615 P.2d 1260, 1263 (Utah 1980) ("[T]he fact a [victim] has consented to sexual activity in the past under different circumstances and

---

(…continued)
and "had no response," trial counsel was not "encourag[ing] the trial court to make an erroneous ruling," *see McNeil*, 2016 UT 3, ¶ 17, but was most likely acknowledging the court's decision to avoid antagonizing the court by making further argument, *see State v. Bird*, 2012 UT App 239, ¶ 12, 286 P.3d 11 ("[F]utile objections are not required to preserve issues for appeal."), *aff'd*, 2015 UT 7, 345 P.3d 1141. At most, trial counsel was "affirmatively acquiescing in the court's decision," *see State v. Marquina*, 2018 UT App 219, ¶ 24, 437 P.3d 628, *cert. granted*, 440 P.3d 691 (Utah 2019), which has been rejected by our supreme court as a basis for invited error, *see McNeil*, 2016 UT 3, ¶¶ 18, 21. Thus, there was no invited error in this regard, and we review the issue as stated by Defendant.

with individuals other than the defendant has little if any relevancy to the question of [his or] her consent in the situation involved . . . ."). Even if the evidence is relevant, "it has an unusual propensity to unfairly prejudice, inflame, or mislead the jury and is likely to distort the jury's deliberative process and should therefore be excluded." *Tarrats*, 2005 UT 50, ¶ 21 (quotation simplified).

¶30 But rule 412 provides an exception, among others, for the admission of "evidence whose exclusion would violate the defendant's constitutional rights," provided that "the evidence is otherwise admissible under" the Utah Rules of Evidence. Utah R. Evid. 412(b); *see also State v. Thornton*, 2017 UT 9, ¶ 74, 391 P.3d 1016 ("[W]here rules of evidence or procedure foreclose any meaningful avenue for presenting a defendant's fundamental defense to charges against him, . . . [constitutional rights] override rules of evidence or procedure."); *State v. Boyd*, 2001 UT 30, ¶ 39, 25 P.3d 985 ("Evidence that fits the exception may still be excluded if it does not satisfy requirements of the other evidence rules . . . ." (quotation simplified)).

¶31 The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to a speedy and public trial," "to be confronted with the witnesses against him," and "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court has interpreted these provisions to "encompass some form of 'right to present [a] defense.'" *Thornton*, 2017 UT 9, ¶ 74 (alteration in original) (quoting *Rock v. Arkansas*, 483 U.S. 44, 48, 56 (1987)). However, the "right to present a defense is far from absolute." *Id.* ¶ 76. Rather, a defendant is guaranteed "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

¶32 Evidentiary rulings will therefore violate a defendant's Sixth Amendment rights only if they "foreclose any meaningful avenue for presenting a defendant's fundamental defense to charges against him." *Thornton*, 2017 UT 9, ¶ 74. At a minimum this requires a defendant to prove "that the evidence in question is essential to the presentation of a defense." *Id.* ¶ 78 (citing *United States v. Scheffer*, 523 U.S. 303, 315 (1998)); *see also Tarrats*, 2005 UT 50, ¶ 36 ("Many evidentiary rules necessarily limit to some degree a defendant's ability to question witnesses and introduce evidence. So long as impingements upon a defendant's constitutional rights pursuant to these evidentiary rules are not arbitrary or disproportionate to the purposes they are designed to serve, they are constitutional." (quotation simplified)).

¶33 Defendant argues that evidence that Victim had previously engaged in homosexual activity was essential to his defense that Victim consented "because the State relied on [Defendant]'s statement to police that [Victim] said he was straight as well as [Victim]'s testimony that he did not remember but was nevertheless confident that he would not have consented to sex with [Defendant]." We disagree.

¶34 First, the jury never heard from Victim about his sexual orientation. During direct examination, Victim stated that he "definitely would have never" flirted with Defendant because he "did not do such behavior." Then on cross-examination, in what appears to be an effort on the part of trial counsel to get Victim to open the door and definitively state that he was straight and on that basis would not possibly have given his consent to engage in sexual activity with Defendant, trial counsel asked him if it was "true that he d[id]n't remember what [he] said or did with [Defendant] at any location that [they] were at that evening." Victim then responded that "[he] would know if [he] would have given consent."

¶35    Victim's statements, when read together, were neutral as concerns his sexuality but were clear as to his lack of consent. Victim's testimony could be interpreted to describe a number of concerns unrelated to Victim's sexuality, like that he would not have flirted with or consented to sexual activity with Defendant because he did not find Defendant sexually attractive, did not flirt or have sex with people he barely knew, was in a committed relationship with someone else and would hence be unwilling to flirt and engage in sexual activity with another, or made it a point never to flirt or have sex while inebriated. Trial counsel did not explore Victim's statements further in an effort to understand the basis of Victim's testimony on consent. We are therefore not persuaded that Victim's testimony *must* be interpreted to mean, as Defendant contends, that Victim knew he did not consent to have sex with a man because he was not gay. The door to that defense is one Defendant wanted to open at trial, but we agree with the trial court that Victim's testimony did not open that door.

¶36    Additionally, the State offered Defendant's own words that Victim identified as straight, along with Defendant's statements that it was a "challenge, getting a straight guy" to have sex with him and just because "[they're] straight doesn't mean that . . . they don't want to [have sex]" to show *Defendant's* motive to sexually assault Victim—not to show the unlikelihood that Victim would have consented. In other words, these statements were elicited to show Defendant's state of mind, not Victim's, and we fail to see how admission of the rule 412 evidence would be "essential to the presentation of [Defendant's] defense" on the issue of consent. *State v. Thornton*, 2017 UT 9, ¶ 78, 391 P.3d 1016.

¶37    Defendant further asserts that Victim, as a gay or bisexual man, "would be more likely to give indications of consent." Defendant also claims that the rule 412 evidence is critical because when Victim "was blacked out from alcohol

consumption," he could have "acted in a way that gave [Defendant] no cause to question whether [Victim] was awake and consenting."[5] We see this argument as essentially irrelevant where sexuality was not presented as a basis for lack of consent. Without Victim himself claiming that he was straight and therefore would not consent to sexual activity with another man, his "prior sexual conduct [was] simply not relevant to any issue in the rape prosecution including consent," *see State v. Tarrats*, 2005 UT 50, ¶ 21, 122 P.3d 581 (quotation simplified), and thus was not "essential to the presentation of [Defendant's] defense," *see Thornton*, 2017 UT 9, ¶ 78; *see also People v. Hackett*, 365 N.W.2d 120, 126 (Mich. 1984) ("[T]he fact that a person is a homosexual, standing alone, has little or no logical relevance between the excluded prior sexual acts evidence and the issues of consent or credibility.").

¶38 Furthermore, Defendant's argument that the rule 412 evidence was "otherwise admissible" under rule 608(c) of the Utah Rules of Evidence as impeachment evidence is unavailing. Victim did not testify at trial concerning his sexuality as a basis for lack of consent. We therefore cannot see how purported evidence of past homosexual behavior would demonstrate a motive for Victim to misrepresent the facts of this case. *See* Utah R. Evid. 608(c); *cf. State v. Glodgett*, 813 A.2d 444, 448 (N.H. 2002) ("We are not persuaded that the mere existence of a [previous] homosexual relationship would motivate the victim . . . to testify falsely against the defendant."). If anything, the purported evidence would have shown the jury that in the past, Victim willingly engaged in sexual interactions with other men and thus the only problem he had with this sexual incident with Defendant was that he did not consent to it—not that he was

---

5. It is, of course, a more likely inference that someone who is "blacked out from alcohol consumption" is incapable of giving consent to sex.

embarrassed by it, would immediately report it to the police, or would lie about it. Thus, the evidence might well have bolstered Victim's account and therefore was neither appropriate under rule 608(c) nor "essential to the presentation of [Defendant's] defense." *See Thornton*, 2017 UT 9, ¶ 78.

¶39 Additionally, the court's evidentiary ruling did not "foreclose any meaningful avenue" for Defendant to present a "fundamental defense to [the] charges against him." *Id.* ¶ 74. During cross-examination of Victim, trial counsel was able to elicit that Victim has "difficulty with [his] memory" in general due to a motorcycle accident, was "blacked out" the night of the incident due to voluntary alcohol consumption, and could not remember many specifics from the night in question. This, combined with Defendant's detailed testimony about what happened and that he believed the incident was consensual, allowed Defendant to present his defense, particularly on the issue of consent. Evidence of Victim's prior sexual activity would have done little to change the narrative or affect the defense presented because the trial centered on consent (or the lack thereof) and consenting to similar sexual activity in the past with others is not evidence of consent on a different occasion. *See State v. Johns*, 615 P.2d 1260, 1263 (Utah 1980); *see also United States v. Kasto*, 584 F.2d 268, 271–72 (8th Cir. 1978) ("[E]vidence of a rape victim's . . . specific [sexual] acts with persons other than the defendant, is ordinarily insufficiently probative either of [the victim's] general credibility as a witness or of [the victim's] consent . . . ."); *State v. Superior Court*, 545 P.2d 946, 952 (Ariz. 1976) ("The fact that a [person] consented to sexual intercourse on one occasion is not substantial evidence [he or] she consented on another, but in fact may indicate the contrary."); *State v. Higgins*, 821 A.2d 964, 971–72 (N.H. 2003) ("Each decision to consent is a new act, a choice made on the circumstances prevailing in the present, not governed by the past." (quotation simplified)).

¶40 We therefore hold that the trial court correctly applied rule 412 in light of Defendant's constitutional rights and did not exceed its discretion in excluding the evidence of Victim's sexual behavior. The court acknowledged that if Victim "said I am absolutely a straight male" and "I would never consider homosexual sex on any level," then these types of statements would allow Defendant to introduce evidence about Victim's previous sexual conduct. Conversely, the evidence would not come in if Victim did not make statements like that. Absent Victim definitively claiming at trial that he would not have consented because he was not gay, his "sexual activity in the past under different circumstances and with individuals other than . . . [D]efendant has little if any relevancy to the question of [his] consent in th[is] situation." *See Johns*, 615 P.2d at 1263.[6]

---

6. Our analysis may well have resulted in a different conclusion had Victim or the State made an explicit assertion at trial that consent was lacking because Victim identified as straight. Courts have generally been more open to admitting rule 412 evidence when a complainant or the prosecution "uses sexual orientation in a way that implies the impossibility of consent." *United States v. Villanueva*, No. NMCCA 201400212, 2015 WL 1305782, at \*3 (N-M. Ct. Crim. App. Mar. 19, 2015); *see also id.* at \*4 ("[The victim] testified during the trial that he 'was straight.' This could only have left the members [of the jury] with the impression that, since [the victim] was not gay, he would not have consented to the sodomy. The appellant's inability to confront and impeach him on this critical point severely impacted his ability to present a defense."). For example, in *State v. Williams*, 477 N.E.2d 221 (Ohio Ct. App. 1984), "the victim testified on direct examination that she was a lesbian, that because of this she had never and would never consent to sexual relations with a man and that therefore she did not consent to sexual intercourse with appellant." *Id.* at 227 (quotation simplified). The

(continued…)

¶41     Accordingly, Defendant cannot show "that the evidence in question [was] essential to the presentation of a defense" and should have been admitted. *Thornton*, 2017 UT 9, ¶ 78.

---

(…continued)

Ohio Court of Appeals observed that the prosecution relied on the claims of the victim about her sexual orientation "as proof" of her lack of consent. *Id.* "This testimony was elicited by the prosecution on direct examination. The evidence is clearly substantially material, relevant and probative as to the element of force or threat of force in consummating the admitted sexual activity." *Id.* The court stated that the evidence offered by the defendant "would tend to show that the victim was lying when she said she was a lesbian and had never had consensual sexual relations with any man," and it therefore concluded that "[t]he refusal to allow appellant to present evidence which is so highly probative, relevant and material as to an element of the crime violated his Sixth Amendment rights to confront the witnesses against him." *Id.* at 228. *But see Minter v. Commonwealth*, 415 S.W.3d 614, 619 (Ky. 2013) ("Appellant implies that because the victim said that he was 'straight,' that is, he claimed he was not predisposed toward gay sexual relations, evidence that he had voluntarily engaged in other homosexual conduct acquired a unique relevance. We disagree. There is no doubt that [rule 412] operates to shield putative victims from disclosure of prior sexual behaviors that have no relevance to the offense on trial except to cast a negative light upon the alleged victim. The purpose of the rule and the language of the rule allow for no differentiation between heterosexual behavior and homosexual behavior. Accordingly, the testimony was inadmissible under [rule 412] because it is evidence of 'other sexual behavior' that is offered to cast doubt on [the victim's] testimony with evidence of his alleged prior sexual behavior and his alleged sexual predisposition.").

## II. Ineffective Assistance of Counsel Regarding Rule 412 Evidence

¶42    Defendant contends that trial counsel rendered ineffective assistance by failing to "support his rule 412 motion with a detailed proffer." Defendant also argues that trial counsel was ineffective in failing to renew the rule 412 motion when Victim stated at trial that he "definitely would have never" flirted with Defendant, that he "did not do such behavior," and that he "would know if [he] would have given consent." Assuming without deciding that trial counsel was deficient for not submitting a detailed proffer and not renewing the rule 412 motion at trial, we hold that Defendant cannot show under the second prong of *Strickland v. Washington*, 466 U.S. 668 (1984), that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. We therefore decline to analyze whether trial counsel's performance was deficient. *See Rhinehart v. State*, 2012 UT App 322, ¶ 9, 290 P.3d 921 ("We may choose not to consider the adequacy of counsel's performance if we determine that any claimed error was not harmful." (quotation simplified)).

¶43    The trial judge, who initially ruled on trial counsel's rule 412 motion, presided over the rule 23B remand hearing. After the remand hearing, at which two witnesses testified Victim had previously engaged in homosexual conduct, the court found that trial counsel "did not perform deficiently because a more detailed proffer would not have changed [its] pre-trial ruling," that "reasonable counsel could decide that Victim's trial testimony did not open the door to the proposed impeachment," and that "there was no prejudice." Thus, even if trial counsel had provided a detailed proffer of the proposed testimony regarding Victim's prior sexual behavior to the court before trial, the court would have denied the motion, and Defendant cannot show that "there is reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Additionally, while we are "free to make an independent determination of a trial court's [legal] conclusions," *State v. Kozlov*, 2012 UT App 114, ¶ 29, 276 P.3d 1207 (quotation simplified), we agree with the trial court that Defendant has not shown prejudice. We reach this conclusion given the trial court's determination that had trial counsel renewed the rule 412 motion, the court would have again rejected Defendant's request to question Victim about his prior sexual history or introduce evidence of any alleged sexual conduct because Victim's testimony on the central issue of consent did not open that door.[7] Thus, a determination that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, cannot follow given that the trial court would not have found that the door was opened and we would have affirmed that rationale on appeal, as explained *supra* ¶¶ 33–41.

### III. Jury Instructions

¶44 Defendant next argues that the trial court "lacked the discretion to leave out a jury instruction explaining the mistake-

---

7. We agree with the trial court's assessment that counsel "could have reasonably decided that Victim's trial testimony did not open the door" to the admission of evidence concerning Victim's sexuality because his answer, "I definitely would have never done that," "could reasonably be understood to refer to Victim's not flirting with [Defendant] particularly . . . not men generally." Given the trial court's assessment, it is unlikely that the court would have allowed the rule 412 evidence because the "door" to consider Victim's sexual behavior insofar as it concerned consent was not opened by Victim.

of-fact defense" "because the mistake-of-fact defense had a strong evidentiary basis."

¶45    Defendant was charged with forcible sodomy, which required the State to prove that Defendant "engage[d] in any sexual act . . . involving the genitals of one individual and the mouth or anus of another individual . . . without the other's consent." Utah Code Ann. § 76-5-403(1)–(2) (LexisNexis Supp. 2019). As the sodomy statute does not specify the requisite mens rea for the offense, we must turn to Utah Code section 76-2-102, which directs that "when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility." *Id.* § 76-2-102 (2017). Recklessness, which was what the State argued Defendant's actions at least amounted to, is when a person "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise . . . ." *Id.* § 76-2-103(3).

¶46    "A party is entitled to have the jury instructed on its theory of the case if competent evidence is presented at trial to support its theory, although a party is not entitled to have the jury instructed with any particular wording." *State v. Marchet*, 2012 UT App 197, ¶ 17, 284 P.3d 668 (quotation simplified). "As long as the instructions, read as a whole, fairly instruct the jury on applicable law, it is not error to refuse a particular instruction." *Id.* (quotation simplified). Furthermore, "[j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might." *Boyde v. California*, 494 U.S. 370, 380–81 (1990). Rather, "[d]ifferences among [jurors] in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken

place at the trial likely to prevail over technical hairsplitting." *Id.* at 381. The prejudice standard for giving an incorrect jury instruction is prescribed by the Utah Rules of Criminal Procedure, which provide that "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R. Crim. P. 30(a). Our supreme court has held that this ordinarily requires a defendant to show that, absent the error, there is "a reasonable likelihood of a more favorable result for the defendant." *State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (quotation simplified).

¶47 Defendant proposed three mistake-of-fact instructions, all of which were rejected by the trial court. The first instruction stated,

> [I]t is an affirmative defense to a crime when a person acts under ignorance or a mistake of fact— here, a mistake of fact as to the existence of consent.
>
> . . . .
>
> A mistake of fact defense as to a person's lack of consent to the sexual activity charged has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly and in good faith, albeit mistakenly, believed that the other person consented to the sexual intercourse or activity. The objective component asks whether the defendant's mistake regarding consent was reasonable under the circumstances.

¶48 The second instruction explained,

> As a general rule, if some evidence has been presented by either the defense or the prosecution that supports an "affirmative defense," then the State has the burden to prove beyond a reasonable doubt that the defense does not apply.

> In this trial, some evidence has been presented to you regarding the affirmative defense of "Mistake of Fact." Under Utah law, it is an affirmative defense to a crime that a person acts under ignorance or mistake of fact—here, a mistake of fact as to consent.

¶49   Finally, the third instruction incorporated the first two and instructed the jury, "In the event that you find [Victim] did not consent, you must additionally find beyond a reasonable doubt that the affirmative defense of 'Mistake of Fact' as to consent does not apply." It additionally stated that if "the State has failed to disprove the affirmative defense beyond a reasonable doubt, then you must find the defendant not guilty."

¶50   The instructions that were provided to the jury by the court instead informed the jurors that to find Defendant guilty of forcible sodomy, they must find beyond a reasonable doubt that he "[i]ntentionally, knowingly, or recklessly committed a sexual act involving any touching of the skin, however slight, of the genitals of one person and the mouth or anus of another . . . [w]ithout [Victim]'s consent" and that "[Defendant] acted with intent, knowledge or recklessness that [Victim] did not consent." The court also instructed the jury that a person acts recklessly when he "is aware of a substantial and unjustifiable risk that certain circumstances exist relating to his . . . conduct, consciously disregards the risk, and acts anyway" and that "[t]he nature and extent of the risk must be of such a magnitude that disregarding it is a gross deviation from what an ordinary

person would do in that situation." Additionally, the jury was instructed that the State

> must prove beyond a reasonable doubt that [Victim] did not consent to the alleged sexual conduct. The alleged sexual conduct is without consent of [Victim] under any, all, or a combination of the following circumstances:
>
> [Victim] expressed lack of consent through words or conduct;
>
> [Defendant] overcame [Victim] through concealment or by the element of surprise;
>
> [Defendant] knew [Victim] was unconscious, unaware that the act was occurring, or was physically unable to resist;
>
> [Defendant] knew that as a result of mental illness or defect, or for any other reason [Victim] was incapable at the time of the act of either understanding the nature of the act or of resisting it.

¶51 "We affirm the trial court's denial of [Defendant's] requested mistake-of-fact instruction because the jury instructions as a whole fairly instructed the jury on the applicable law." *See State v. Marchet*, 2012 UT App 197, ¶ 17, 284 P.3d 668 (quotation simplified). Read as a whole, the jury instructions informed the jury that Defendant was guilty of forcible sodomy if the State proved beyond a reasonable doubt that Victim did not consent and that Defendant was at least reckless in determining whether Victim consented. *See State v. Newton*, 2020 UT 24, ¶ 34 ("In convicting [the defendant], the jury must have found that [the victim] did not consent and, by

extension, must have concluded that [the defendant] intentionally, knowingly, or recklessly had *nonconsensual* sexual intercourse with [the victim]." (quotation simplified)). In reaching its verdict, the jury was required to resolve Defendant's theory at trial that Victim actually consented or that Defendant reasonably, but mistakenly, believed that Victim consented. While the instructions did not include the phrase "mistake-of-fact" as Defendant sought, there is no error by the trial court because "the point [was] properly covered in the other instructions." *See State v. Sessions*, 645 P.2d 643, 647 (Utah 1982); *see also Marchet*, 2012 UT App 197, ¶ 17 ("A party is not entitled to have the jury instructed with any particular wording." (quotation simplified)).

¶52 We therefore determine that the trial court did not abuse its discretion in declining to give Defendant's proffered instructions because the court properly instructed the jury on the applicable law. Furthermore, Defendant cannot show prejudice because the jury was essentially instructed on everything Defendant had requested, and therefore the result of the trial would not have been different had Defendant's preferred instructions been given to the jury. Indeed, the evidence shows only that Victim was either unconscious or initiated the sexual encounter. "As a result, the jury could not easily have thought that the truth fell somewhere in between the two accounts." *Newton*, 2020 UT 24, ¶ 34 (quotation simplified).

IV. Additional Ineffective Assistance of Counsel Claims

A. Trial Counsel's Alleged Ineffective Assistance for Failing to Correctly Argue the Rules of Evidence

¶53 Defendant asserts that trial counsel was ineffective for not "correctly argu[ing] the rules of evidence" in attempting to admit evidence of the circumstances of Defendant's

interrogation, which the trial court prohibited. (Quotation simplified.)

¶54    Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Assuming, without deciding, that trial counsel was deficient for not correctly arguing the rules of evidence in attempting to admit evidence of the circumstances of Defendant's interrogation, we hold that trial counsel did not provide ineffective assistance, because Defendant cannot show prejudice.

¶55    Defendant argues that if he "had been allowed to testify about the influence of exhaustion, dehydration, alcohol, [and] nerves . . . he could have rehabilitated his credibility for the jury." He also asserts that "he could have rehabilitated his credibility" if he had been allowed to testify about "minimization techniques on his responses during custodial interrogation." While the court did prohibit trial counsel from exploring the interrogation circumstances at the level that trial counsel wished, much evidence was admitted about those circumstances. On cross-examination, the officer said that Defendant was in a holding cell for three hours, which the officer admitted could make someone hesitant to talk. The jury also heard that Defendant was in handcuffs, the officers were in uniform, Defendant was "mirandized," and Defendant was not comfortable talking to these officers. Furthermore, Defendant's testimony that he was not offered water or something to eat "for a while" and that he "didn't know what was going on" and "didn't want to talk to" the interrogating officer was heard by the jury and not stricken from the record. On cross-examination, Defendant stated that the prosecutor was mischaracterizing his statements during the interrogation and that the State was "making it sound like it's some sort of a game, and it's not." And he "was trying to explain to [the officer] how it could be possible

for a man who identified as straight to have sex with a gay man. And that was the best possible way that [Defendant] could do that at that point, in the state that [he] was." The jury also saw the entire video of the interrogation and heard Defendant say he "d[id]n't feel comfortable answering questions," was "exhausted," and was "not sober." The only evidence stricken was Defendant's answer to trial counsel's question about whether he spoke to the officer voluntarily, to which he responded, "I think I was a little bit confused." Additionally, during closing argument trial counsel stated,

> Is [Defendant] justifiably afraid of talking to the police? Does [Defendant] want to go talking about his laundry, airing his laundry in front of the police. Would you? He knows something's wrong. He knows [Victim] has called the police. But he's in handcuffs and these people are in uniform and they want to talk to him. And so when he finally gets to a point where he's ready to talk, . . . he's got plenty to say about what happened. And I think that videotape is probably your best guide to what actually transpired.

¶56 Based on all the evidence that the jury actually heard about Defendant's condition during his interrogation, we fail to see how Defendant was prejudiced by trial counsel choosing not to argue the rules of evidence to admit more such evidence. The jury clearly heard what state Defendant was in, and Defendant has not demonstrated how the evidence he claims he would have presented would have altered the evidentiary picture already before the jury or led the jury to a different conclusion. Consequently, there is not a "reasonable probability" that had trial counsel argued to admit more such evidence, the result would have been more favorable to him. *See Strickland*, 466 U.S. at 694.

B.    Trial Counsel's Alleged Ineffective Assistance for Failing
      to Exclude Defendant's Statement

¶57    Defendant argues that trial counsel was "ineffective for failing to exclude [his] comment that [Victim] was straight and that [Defendant] had 'a thing for straight guys.'" Defendant contends that "[Trial] Counsel should have moved to exclude [Defendant]'s misleading and unfairly prejudicial statements under rule 403, especially in light of the trial court's ruling that . . . the circumstances of the police interview were not [admissible] and the court's ruling [that] the contextualizing details regarding [Victim]'s sexuality were inadmissible."

¶58    Under rule 403, a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403. This rule generally takes the form of a two-part test. *See* R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 403 (2019–2020 ed.). The first step is to identify the probative value of the evidence. "Probative value is a relative concept, depending upon measuring the quality of the proof of the contested fact against the importance of the issue in relation to the legal issues of the case." *Id*. If "the relative need for the evidence [is] critical . . . , the court is less likely to exclude [it] under rule 403." *Id*. The second step is to assess the unfair prejudice that may result from the evidence. "Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Jaimez*, 817 P.2d 822, 825 (Utah Ct. App. 1991) (quotation simplified). "[I]n the usual case, the presumption is in favor of admissibility." *State v. Dibello*, 780 P.2d 1221, 1229 (Utah 1989).

¶59    Defendant claims that even in context his statements had "low probative value." We disagree. The statements were highly

probative. Defendant's statements that Victim was straight and that it was a "challenge, getting a straight guy" to have sex with him and just because "[they're] straight doesn't mean that . . . they don't want to [have sex]," are highly probative to show *Defendant's* motive to have sex with Victim and whether he was at least reckless regarding Victim's consent. Defendant's statements were crucial to the State's case and went directly to Defendant's state of mind, which must be proven beyond a reasonable doubt. Such evidence—a defendant's own words—is clearly quite probative.

¶60    Defendant also alleges that he "was unable to explain [the] context" of his police interrogation and that the statements thus "carried a serious danger of unfair prejudice because, absent that context, they implied both that [Victim] would not have consented because he was straight and that [Defendant] considered sex with a non-consenting partner a challenge." Rule 403 does not prohibit prejudicial evidence—only *unfairly* prejudicial evidence. Relevant evidence against a defendant is invariably prejudicial in that it can lead a jury to convict. The true marker is if it is *unfairly* prejudicial. *See State v. Wilson*, 2020 UT App 30, ¶¶ 30–31, 461 P.3d 1124 (explaining that probative evidence is prejudicial because it "tends to affect the outcome," but rule 403 excludes unfairly prejudicial evidence and not merely prejudicial evidence). Defendant's statements were clearly prejudicial as the jury heard directly from Defendant that it was a "challenge, getting a straight guy" and that Victim was, in Defendant's estimation at least, straight. But it was not *unfairly* prejudicial as the jury was able to watch the interrogation and hear contextual evidence from Defendant and the interrogating officer about the interview. *See supra* ¶ 55. Furthermore, Victim's own testimony left open the possibility that Victim could have consented to sex with another man at a different time. *See supra* ¶ 35. Neither the State nor Victim directly stated that because Victim was straight, he would not have consented. In light of

Victim's testimony and the evidence that the jury was able to analyze, Defendant's own words were not unfairly prejudicial.

¶61    Trial counsel was therefore not deficient in failing to move to exclude Defendant's own words because Defendant cannot show that it was unreasonable for counsel to have concluded that the statements were inadmissible. *See State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350 (stating that the "ultimate question" for deficient performance "is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable"). On the contrary, given the highly probative nature of the evidence, which was not significantly outweighed by any potential for *unfair* prejudice, any objectively competent attorney would recognize that a motion to exclude under rule 403 would have been rejected by the trial court. And the "[f]ailure to raise futile objections does not constitute ineffective assistance of counsel." *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546.

C.    Trial Counsel's Alleged Ineffective Assistance for Failing to Object to Nurse's Testimony

¶62    Defendant asserts that trial counsel "was ineffective when he failed to object to [Nurse's] testimony that Victim's purported failure of memory was a common effect of trauma," because the testimony "falls under Utah Rule of Evidence 403's bar on evidence when its potential for prejudice substantially outweighs its probative value."

¶63    Nurse testified that she was not concerned by Victim's lack of memory of the sexual assault, opining that "[i]t's very common that either due to alcohol, drugs, or just the traumatic experience, a lot of people will not have any real recollection or they don't know a lot of detail about what happened. It's just part of trauma." She then stated that "just the fact that [Victim] said he had several drinks and he wasn't sure what was in

them" could explain why Victim could not remember the event. And she added that his memory issues could have resulted from "just alcohol consumption."

¶64   Relying on *State v. Jones*, 2015 UT 19, 345 P.3d 1195, Defendant contends that Nurse's testimony "should have drawn objection" from trial counsel because "Utah courts have 'condemned anecdotal statistical evidence when it concerns matters not susceptible to quantitative analysis.'" (Quoting *id.* ¶ 50.) In support, Defendant asserts that this case is similar to *State v. Rammel*, 721 P.2d 498 (Utah 1986), and *State v. Iorg*, 801 P.2d 938 (Utah Ct. App. 1990), where testimony was found to be improper because it concerned the veracity of another witness.

¶65   In *Rammel*, a detective testified that when suspects are first interrogated by police, "no criminal suspect ever admitted 'right off the bat' to committing a crime" and he did not think it was "unusual" for the witness to lie when he was first interrogated. 721 P.2d at 500. The main problem the Utah Supreme Court found with the testimony was that the trial court admitted the detective's testimony because he "was an expert apparently qualified to testify on [the witness's] capacity for telling the truth." *Id*. The State "attempted to establish, in effect, that there was a high statistical probability that [the witness] lied," which was improper because it "invite[d] the jury to focus upon a seemingly scientific, numerical conclusion rather than to analyze the evidence before it and decide where truth lies." *Id.* at 501. In *Iorg*, a detective testified that late reporting by a child victim in sexual abuse cases "does not mean a victim is not telling the truth." 801 P.2d at 941. This court determined that the "testimony had the same potential for prejudice as the testimony condemned in *Rammel*" and adjudged it improper. *Id*.

¶66   This case is distinguishable from *Rammel* and *Iorg*. In those cases, the problem with the testimony was that it focused directly on the veracity of another witness's testimony. In *Iorg*,

the detective testified about whether the witness "truthfully reported" a sexual assault and that "late reporting does not mean a victim is not telling the truth." *Id.* In *Rammel*, the detective testified directly on the witness's "capacity for telling the truth." 721 P.2d at 500. In the present case, Nurse did not testify as to whether Victim was telling the truth or whether he was "statistically more likely to be a victim of the charged crime," as Defendant asserts. She simply provided anecdotal testimony, based on her general experience, as to why Victim may have forgotten major portions of the sexual assault. This was not improper because she did not comment on Victim's veracity. *See State v. Bair*, 2012 UT App 106, ¶ 47 n.10, 275 P.3d 1050 (holding a detective's testimony was not analogous to that found improper in *Iorg* because he "did not directly comment on [two witnesses'] veracity, or use his 'anecdotal statistical' experience . . . to otherwise directly opine on [the witnesses'] veracity"). Thus, this testimony did not unfairly prejudice Defendant and did not violate rule 403, because Nurse did not opine as to the veracity of Victim's testimony. Her testimony about why Victim would perhaps not remember the event is probative because it may well help the jury understand how Victim could have forgotten much about the sexual assault. It is a far cry from Defendant's claim that "[t]he jury could have adopted the judgment of the expert, necessarily requiring it to reject the evidence that [Victim] was testifying untruthfully."

¶67   Because Nurse's testimony did not violate rule 403 or appellate precedent, trial counsel could not be deficient for failing to make a fruitless objection. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546.

CONCLUSION

¶68   We conclude that the trial court did not abuse its discretion, and therefore did not violate Defendant's

constitutional rights, by excluding evidence of Victim's past sexual behavior. We also hold that the trial court did not abuse its discretion in declining to give Defendant's requested mistake-of-fact jury instructions, because the instructions that were given properly stated the law. Furthermore, we conclude that trial counsel was not constitutionally ineffective for failing to support his rule 412 motion with a detailed proffer, for failing to renew the rule 412 motion in response to Victim's testimony, for not arguing the rules of evidence more fully to admit more context about Defendant's interrogation, for failing to exclude Defendant's own words from his interrogation, or for failing to object to Nurse's testimony.

¶69    Affirmed.

———